UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ANNETTE EHRLICH,** | ) CASE NO. 1:14cv2560 |
| ) | |
| **Plaintiff,** | ) |
| ) | |
| v. | ) **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MICHAEL KOVACK *et al*,** | ) |
| ) | **MEMORANDUM OPINION & ORDER** |
| **Defendant.** | ) |

Currently before the Court is Defendants Michael Kovack and Joan Heller's Motion to Stay the instant proceedings (Doc. No. 23), pending the conclusion of criminal proceedings relating to Defendant Kovack.[1]  Plaintiff Annette Ehrlich filed a Brief in Opposition on March 19, 2015, to which Defendants Kovack and Heller replied.  (Doc. Nos. 24, 29.)  Oral argument regarding Defendant Kovack and Heller's Motion was conducted on May 1, 2015.

For the following reasons, Defendants Kovack and Heller's Motion to Stay (Doc. No. 23) is DENIED.

---

[1] This case is before the Court upon consent of the parties, entered December 1, 2014. (Doc. No. 6.)

I.      **Procedural and Factual Background**

On October 24, 2014, Plaintiff Annette Ehrlich filed a Complaint in the Medina County Court of Common Pleas against the following defendants: (1) Medina County Auditor Michael Kovack; (2) Medina County Chief Deputy Auditor Joan Heller; (3) Medina County, Ohio; and, (4) the Medina County Commissioners.[2]  (Doc. No. 1-3.)

The Complaint alleges the following.  Plaintiff was formerly employed as an Information Technology Manager in Defendant Kovack's Medina County Auditor's Office.  (Doc. No. 1-3 at ¶ 3.)  On July 21, 2011, Defendant Kovack provided his County laptop to Plaintiff for repairs.  *Id*. at ¶ 9.  While working on Defendant Kovack's computer, Plaintiff discovered "thousands of pornographic images" and reported her discovery to Kovack.  *Id.* at ¶ 10.  Defendant Kovack stated his son had used the computer and downloaded the images.  *Id.* at ¶ 11.

Several years later, in September 2013, Plaintiff discovered Auditor's Office print logs indicating Defendant Kovack had printed campaign materials for his Wine and Cheese political fund raiser.  *Id*. at ¶ 12.  In February 2014, Plaintiff discovered Auditor's Office print logs indicating Defendant Kovack had printed campaign materials for his Chili Cook Off political fund raiser.  *Id.* at ¶ 13.

On March 19, 2014, Plaintiff sent a letter to Defendant Kovack, reporting her discovery that he had used the County printer to print campaign literature.  *Id.* at ¶ 14.  This letter was copied to the Medina County Human Resources Department, as well as to Plaintiff's supervisors Defendant Heller and Lisa Nichols.  *Id.* at ¶¶ 14-15.  In addition, Plaintiff's letter (which is

---

[2] Defendants Medina County and the Medina County Commissioners will hereinafter be referred to as "the Medina County Defendants."

attached to the Complaint as Exhibit A) addressed Plaintiff's concerns about the denial of her request to use her vacation time to attend a computer training seminar ("Pictometry training"). In her letter, Plaintiff states that she felt Defendants Kovack and Heller had been "picking on her;" failing to treat her as a valued employee; and, creating a hostile work environment. (Doc. No. 1-3 at p. 14.)

The next day, on March 20, 2014, Defendant Kovack, Defendant Heller, and Nichols met with Plaintiff and presented her with a letter dated March 17, 2014 scheduling a pre-disciplinary conference on March 21, 2014 regarding Plaintiff's "insubordination" relating to the Pictometry training incident. (Doc. No. 1-3 at ¶ 18). That same day, Plaintiff filed a report with the Medina County Sheriff describing Defendant Kovack's alleged use of County resources to print campaign literature. *Id.* at ¶ 23. She allegedly included "proof" in this report. *Id.* at ¶ 24. At Plaintiff's disciplinary hearing, Defendant Kovack advised Plaintiff that he was probably going to suspend her for three days for the Pictometry training incident. *Id.* at ¶ 25. On March 24, 2014, Kovack advised Plaintiff that, instead, her punishment was to be a written reprimand for disrespect and insubordination. *Id.* at ¶ 26.

In July 2014, Plaintiff requested FMLA leave to care for her mother, who had been diagnosed with Lymphoma and was scheduled to undergo chemotherapy. *Id*. at ¶ 27. When she returned from leave on August 25, 2014, Defendant Kovack informed Plaintiff she was being placed on paid administrative leave without explanation until September 3, 2014. *Id.* at ¶ 28. Thereafter, in a letter dated August 29, 2014, Defendant Kovack advised Plaintiff she was being placed on administrative leave until further notice and asked her to report to the Auditor's Office

on September 5, 2014 to discuss concerns Kovack had prior to Plaintiff's FMLA leave. *Id.* at ¶ 29.

The meeting was conducted on September 5, 2014. During the meeting, "Kovack expressed concerns alleging that Ehrlich did not inform the Auditor's Office that Ehrlich was assisting another county department to set up Pictometry training, and that Ehrlich had collected the information regarding Kovack that Ehrlich previously provided to the Medina County Sheriff." *Id.* at ¶ 30. Plaintiff denied the allegations. *Id*. at ¶ 31. She remained on administrative leave following the meeting. *Id*. at ¶ 32.

On September 17, 2014, Medina County Gazette reporter Nick Glunt informed Plaintiff that the Auditor's Office had suggested he make a public records request for Plaintiff's employment file. *Id*. at ¶ 33. Glunt advised Plaintiff her employment file contained "interesting and defamatory" information, including information from Defendant Heller alleging Plaintiff had been violent on at least one previous occasion. *Id.* at ¶ 34. The next day, September 18, 2014, Plaintiff went to the Auditor's Office; requested her employment file; and, asked Defendant Heller about the negative information "inserted" into her file. *Id.* at ¶ 36. Defendant Heller refused to answer. *Id*. at ¶ 37. Upon receipt of her employment file, Plaintiff discovered that "positive accolades regarding her employment performance had been removed." *Id*. at ¶ 38.

That same day, Defendant Heller filed a Petition in the Medina County Court of Common Pleas for Civil Stalking Protection against Plaintiff. *Id*. at ¶ 40. Therein, Defendant Heller alleged Plaintiff had thrown papers at her; exhibited aggressive and agitated behavior; and, "taunted" her. *Id.* at ¶ 41. Defendant Heller also alleged Plaintiff had requested FMLA leave for "anxiety issues." *Id*. at ¶ 42. At an *ex parte* hearing, Defendant Heller voluntarily dismissed the Petition. *Id.* at ¶ 43.

4

On September 19, 2014, Defendant Kovack sent Plaintiff a pre-disciplinary hearing letter. *Id*. at ¶ 44. Plaintiff appeared for the hearing on September 26, 2014, at which time she was accused of being violent toward Defendant Heller on September 18, 2014. *Id.* at ¶ 45. Plaintiff's employment was terminated on September 27, 2014. *Id.* at ¶ 46.

The Complaint alleges the following claims. Count I alleges the Medina County Defendants and Defendant Kovack violated Ohio's Whistleblower Act when they terminated Plaintiff in retaliation for reporting Defendant Kovack's use of County resources to print campaign literature. Count II alleges § 1983 claims against the Medina County Defendants and Defendant Kovack based on these Defendants' alleged retaliation against Plaintiff for exercising her federal constitutional right to free speech and expression. Count III alleges a defamation claim against Defendant Heller based on Heller's statement that Plaintiff took FMLA leave for "anxiety issues." Count IV alleges a malicious prosecution claim against Defendant Heller on the basis that Heller's Petition for Civil Stalking Protection was "made with malice and without probable cause." Count V alleges intentional infliction of emotional distress claims against all Defendants.

Defendants removed the action to this Court on November 20, 2014. (Doc. No. 1.) The next day, Defendants Kovack and Heller, and the Medina County Defendants filed separate Answers. (Doc. Nos. 3, 4.) On January 5, 2014, pursuant to Local Rule 16.3(b), the parties filed a Parties' Planning Report. (Doc. No. 9.) Therein, the parties advised as follows:

> Upon information and belief, the Medina County Sheriff's Department is presently investigating Defendant Michael Kovack. At this point in time, Defendant Kovack is unable to determine when the investigation will be concluded. As a result, Defendant Kovack may be required to seek a stay of any discovery directed to him until the investigation is concluded. Should Defendant Kovack seek such a stay, and the Court determines that Defendant Kovack's stay

5

> request is granted; Plaintiff may be seeking a stay of all discovery until the completion of the investigation.

(Doc. No. 9 at 4.)

A case management conference was conducted on January 16, 2015, at which time certain deadlines were set. (Doc. No. 12.) In addition, the Court ordered Defendants Kovack and Heller to file a Report by March 16, 2015 updating the status of the criminal investigation of Defendant Kovack and advising whether a stay of discovery will be necessary. (Doc. No. 11.)

The Medina Municipal Court docket reflects that, on January 22, 2015, Defendant Kovack was charged with first degree misdemeanor violations of Ohio Revised Code § 9.03(D)(1) (Misuse of Public Funds) and Ohio Revised Code § 102.03(D) (Using a Public Office to Obtain Something of Value). *See State v. Kovack*, Medina Municipal Court No. 15CRB0085, Docket. Kovack entered a plea of no contest and, on February 6, 2015, was referred to a pretrial diversion program pursuant to Ohio Revised Code § 2935.36. *Id*.

On February 12, 2015, Plaintiff served subpoenas on the Medina County Special Prosecutor and the Medina County Sheriff.[3] (Doc. No. 15.) Therein, Plaintiff subpoenaed the entire investigatory file regarding the underlying criminal case against Defendant Kovack. (Doc. Nos. 15-1, 15-3.) The Medina County Defendants moved to quash these subpoenas on both procedural and substantive grounds. (Doc. No. 18.)

The Court conducted a status conference regarding the Medina County Defendants' Motion to Quash on February 26, 2015. (Doc. No. 21.) As discussed during that conference,

---

[3] Plaintiff also subpoenaed the Medina County Engineer and the Medina County Gazette. (Doc. No. 13.) She later withdrew the latter subpoena and subpoenaed Disqus, Inc. instead. (Doc. No. 15-2, 16.) Disqus is a private company that provides a blog comment hosting service for web sites.

and set forth in Minutes issued later that day, the Court ordered counsel for the Medina County Defendants to redact personal identifiers from the Medina County Sheriff report at issue and provide a copy of that report to Plaintiff by no later than March 30, 2015. *Id*. at 1. The Court also indicated that issues relating to the information subpoenaed from the Medina County Special Prosecutor would be addressed at a later date, if necessary. *Id*. at 2.

On March 16, 2015, Defendants Kovack and Heller filed a Motion to Stay the instant case pending the conclusion of the criminal proceedings against him. (Doc. No. 23.) Plaintiff filed a Brief in Opposition (Doc. No. 24) on March 19, 2015, to which Defendants Kovack and Heller replied. (Doc. No. 29.) On March 23, 2015, the Court ordered the Medina County Defendants to refrain from producing the Sheriff report at issue until after the Court had ruled on the pending Motion to Stay. (Doc. No. 27.)

On May 1, 2015, the Court met with counsel to discuss the Motion to Stay, and oral argument was thereafter conducted on the record. (Doc. No. 34.) At that time, the Court denied the motion on the record, and indicated a written order would be forthcoming. *Id.* The parties then agreed to a Stipulated Protective Order containing an Attorney Eyes Only provision regarding the Medina County Sheriff Report at issue and submitted it for the Court's review. The Stipulated Protective Order was entered that day.[4]  (Doc. No. 35.)

**II.     Legal Standard**

---

[4] The Medina County Defendants were ordered to produce a redacted copy of the Sheriff Report to counsel for Plaintiff and counsel for Defendants Kovack and Heller, once the Stipulated Protective Order was entered. Additionally, it was agreed that Defendant Kovack will not be questioned, unless and until authorized by the Court, regarding the criminal charges against him or the fact that he entered a no contest plea and a pre-trial diversion program.

As the Sixth Circuit has explained, "'[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.'" *Federal Trade Commission v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)).

A stay of civil proceedings due to a pending criminal investigation "is an extraordinary remedy." *Id. See also Pullen v. Howard*, 2015 WL 145091 at * 2 (S.D. Ohio Jan. 12, 2015); *Chao v. Fleming*, 498 F.Supp.2d 1034, 1037 (W.D. Mich. 2007); *McCullaugh v. Krendick*, 2009 WL 2929306 at * 1 (N.D. Ohio Sept. 9, 2009). Indeed, it is well-established that "'nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment,' *Chao v. Fleming*, 498 F.Supp.2d 1034, 1037 (W.D. Mich. 2007), and 'there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings,' *S.E.C. v. Novaferon Labs, Inc.*, No. 91-3102, 941 F.2d 1210, 1991 WL 158757, at * 2 (6th Cir. Aug. 14, 1991)." *E.M.A. Nationwide, Inc.*, 767 F.3d at 627. Thus, district courts have "broad discretion" in determining whether to stay a civil action while a criminal action is pending. *Id. See also Chao*, 498 F.Supp.2d at 1037; *McCloskey v. White*, 2011 WL 780793 at * 1 (N.D. Ohio March 1, 2011); *McCullaugh*, 2009 WL 2929306 at * 1; *Baird v. Daniels*, 2013 WL 493236 at * 1 (S.D. Ohio Feb. 7, 2013).

Generally, in evaluating whether to stay a civil action while a criminal action is pending, courts consider and balance the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have

8

> been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*E.M.A. Nationwide, Inc.*, 767 F.3d at 627. In addition to these factors, district courts "should consider 'the extent to which the defendant's fifth amendment rights are implicated.' " *Id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). The most important factor is the balance of the hardships, but "'[t]he district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources.'" *Id.* (quoting *Int'l Bhd. of Elec. Workers v. AT & T Network Sys.*, 879 F.2d 864, 1989 WL 78212, at *8 (6th Cir. July 17, 1989)).

Ultimately, the burden is on the party seeking the stay to show there is "pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396. *See also E.M.A. Nationwide, Inc.*, 767 F.3d at 627; *Pullen*, 2015 WL 145091 at * 2.

**III. Analysis**

Defendant Kovack argues the factors set forth above weigh in favor of a stay. First, he maintains there is significant overlap between the issues presented in the instant case and the criminal action because they "arise from the same set of facts" and "Plaintiff's counsel has taken the position that the criminal investigation and charges are both relevant and necessary to the prosecution of the civil case." (Doc. No. 23 at 4.) With respect to the second factor, Kovack argues the status of his criminal case favors a stay because, although he has been assigned to the pre-trial diversion program, "a trial may nonetheless occur if he decides to withdraw from the program or is unable to complete" it. *Id.* Kovack asserts, therefore, that "[w]hile the specter of a

9

criminal trial looms," it may be "advantageous" for him to invoke his Fifth Amendment right against self-incrimination in the instant proceeding.  *Id.*  Moreover, he claims that, if he completes the diversion program successfully, "the charges will be dismissed and investigatory records sealed," preventing Plaintiff from questioning him about the criminal charges.  *Id.*  Thus, Kovack claims the first and second factors weigh heavily in favor of a stay.

With respect to the third and fourth factors, Kovack concedes Plaintiff has an interest in having the instant case proceed expeditiously, but argues his interest "greatly outweighs" Plaintiff's interest.  Specifically, Kovack maintains that, if the case is not stayed, he "will be forced to choose between asserting his Fifth Amendment rights and defending himself in this litigation." *Id.* at 5.  He argues that "[u]nless this case is stayed, [he] will be placed in a no-win situation which will prejudice him far greater than any inconvenience that the Plaintiff will incur by waiting until the criminal proceedings are concluded."  *Id.*

Kovack further asserts that, if he chooses to testify in the instant case, "he may be placed in the unique situation of having different answers to the questions presented to him based upon the status of his criminal proceedings."  *Id.*  He notes that, if his criminal case is sealed, "the law prohibits" Plaintiff from asking questions about the criminal investigation and proceedings and, if the questions are asked, Kovack "is permitted to respond as though the arrest never happened." *Id.*  Prior to the case being sealed, however, Kovack acknowledges he would be required to answers questions related to the criminal action.  Kovack maintains that "this would present a unique challenge to counsel on all sides of this case and could be avoided by simply staying this matter until the criminal matter has been resolved."  *Id.*

Finally, Kovack argues the fourth and fifth factors also weigh in favor of a stay. He argues the Court's interest in managing its docket would be best served by a stay because "[p]ermitting this case to proceed while the status of [his criminal] records is not yet known could result in the parties expending long hours reviewing criminal records that are ultimately unable to be utilized in a trial of this matter." *Id*. at 6. The public interest also favors a stay, Kovack asserts, because the conclusion of his criminal proceedings will satisfy the public's interest in determining what occurred at the Medina County Auditor's Office. Kovack also argues that "public policy promotes plea bargains and the use of diversion programs such as the one entered into by Mr. Kovack." *Id*.

Plaintiff asserts initially that Kovack's motion is moot because this Court already determined, during the February 26, 2015 status conference, that the Medina County Sheriff report relating to the criminal investigation of Mr. Kovack should be produced, pursuant to this Court's previous decision in *Kauffman v. Medina County Clerk of Courts, et al.*, Case No. 1:13CV1261 (N.D. Ohio) (Doc. No. 44.)  (Doc. No. 24 at 4.)  Addressing the relevant factors, Plaintiff then asserts that the second factor (the status of Kovack's criminal case) weighs against imposing a stay. Plaintiff notes Kovack entered a plea of no contest prior to admission to the pretrial diversion program. According to Plaintiff, the "Medina Municipal Court did not enter a finding of guilt when it accepted the change of plea" but, rather, "informed Kovack that should he not complete the terms of the pretrial diversion program, the Court would enter a finding of guilty on the no contest plea and proceed to sentencing." *Id*. at 5. Thus, Plaintiff asserts that "[w]hile Kovack's case is technically 'still pending,' the investigation is complete, and there is no trial preparation or additional work in anticipation of a criminal proceeding or litigation." *Id*.

11

Additionally, Plaintiff argues Kovack's Fifth Amendment rights will not be implicated because Kovack waived his right to trial when he pled no contest to the charges. *Id*.

Plaintiff next challenges Kovack's argument that his criminal records will be sealed once he completes the diversion program, asserting Kovack is not automatically entitled to have his records sealed upon dismissal of the charges. Rather, Plaintiff argues, Kovack must apply to the municipal court to have the records sealed, at which time that court must determine whether "Kovack's interest in sealing the records outweighs the legitimate needs of the government to maintain [them]." *Id*. at 6. Plaintiff asserts there is a significant governmental interest in maintaining the records at issue. She further maintains that, even if the records were to be sealed by the municipal court, the investigation records would be discoverable and she would be permitted to question Kovack regarding the criminal proceedings. *Id*.

Finally, Plaintiff maintains that "a stay of the case leading to a sealing of the investigatory records and the prohibition of obtaining testimony regarding the criminal matter would substantially prejudice" her because it would prevent her from discovering evidence necessary to prove her First Amendment and Whistleblower claims. *Id.* She argues that "[t]his Court should not grant Kovack the opportunity to hide behind records potentially sealed by the Medina Municipal Court to the prejudice of the Plaintiff's ability to prove her claims." *Id*. at 7.

During oral argument, counsel for Defendant Kovack emphasized that Mr. Kovack entered his no contest plea and the pretrial diversion program based on the state prosecutor's promise that the criminal charges against him would be dismissed and the related records would be sealed. She argued the harm to Defendant Kovack in allowing this case to proceed (and, therefore, allowing the Sheriff Report to be produced) would be great, as it would undermine Mr.

12

Kovack's reasonable expectation of privacy. Counsel also maintained the public interest would be best served by a stay because allowing this case to proceed would discourage defendants from entering pretrial diversion programs, which are supported by public policy as an important means to conserve judicial resources. Finally, counsel argued the harm to Plaintiff in staying the case is minimal because the information in the Sheriff Report was provided by Plaintiff herself and, therefore, she has already had access to this information.

Counsel for Plaintiff noted that Defendant Kovack entered his no contest plea with full knowledge of the instant proceeding. Moreover, he reiterated that Defendant Kovack is not automatically entitled to have his records sealed, as the municipal court judge will make this decision after weighing Defendant Kovack's privacy interests against the public interest in maintaining those records. Finally, counsel maintained Plaintiff would be significantly harmed because access to the information contained in the Sheriff Report at issue is vital to proving her claims.

For the following reasons, the Court finds a stay is not warranted. Although the factual issues in Defendant Kovack's criminal case may overlap with those presented herein to a certain extent, it is undisputed that the criminal investigation against Defendant Kovack is complete. It is further undisputed that Defendant Kovack voluntarily entered a no contest plea, thereby waiving his right to a trial. Indeed, it is the Court's understanding after oral argument that, even if Defendant Kovack fails to successfully complete his pretrial diversion program, the municipal court will proceed directly to sentencing. Thus, although Kovack's criminal case may technically still be "pending," the Court finds the first and second factors do not weigh in favor

of a stay in light of the completion of the criminal investigation and the fact that there does not appear to be any possibility the criminal matter will proceed to trial.

The Court further finds the most important factor, the balancing of the hardships, weighs against staying the instant case.  Plaintiff has a legitimate interest in pursuing her claims expeditiously and would be significantly prejudiced by the extended stay of proceedings contemplated by Defendant Kovack.[5]  Moreover, Defendant Kovack's principal objective in seeking a stay appears to be preventing the disclosure of the Sheriff Report at issue.  This Court has already determined the Report is relevant to Plaintiff's claims and properly discoverable (in redacted form and subject to the parties' Stipulated Protective Order) under the Federal Rules of Civil Procedure.  Having so found, the Court is not inclined to stay the proceedings so that Defendant Kovack may then apply to the state court to have his records sealed and thereby attempt to deny Plaintiff access to records that are relevant to claims in this litigation.

Defendant Kovack argues that allowing this case to proceed will impose a significant burden on him because he entered the pretrial diversion program based on his reasonable expectation that the records would be sealed and his privacy protected.  Under the circumstances presented, the Court is not persuaded that Defendant Kovack's privacy interests outweigh Plaintiff's interest in litigating her claims.  As counsel for Plaintiff noted during oral argument, Defendant Kovack was well aware of the instant proceedings when he entered his no contest plea
and agreed to participate in the pretrial diversion program.  Defendant Kovack was represented by counsel (both in his criminal proceedings and herein) and must have been aware that there

---

[5] During oral argument, counsel for Defendant Kovack indicated that his participation in the pretrial diversion program would not be completed until February 2016.

was some risk that the Sheriff Report would be discoverable. Moreover, the Court notes Defendant Kovack issued a press release in January 2015 in which he publicly acknowledged that he had been the subject of a criminal investigation; had been criminally charged; and, that he resolved these charges by entering a no contest plea and participating in the pretrial diversion program. (Doc. No. 24 at 11.) In light of this public acknowledgment, the Court is not moved by Defendant Kovack's argument that the instant proceedings should be stayed so that he can have his records sealed and then testify as if his criminal proceedings had never occurred.[6]

Accordingly, and for all the reasons set forth above, the Court finds the factors set forth *supra* weigh against staying the instant proceedings. Defendants Kovack and Heller's Motion to Stay (Doc. No. 23) is, therefore, DENIED.

IT IS SO ORDERED.

May 5, 2015  *s/ Greg White*
Date  Greg White
 United States Magistrate Judge

---

[6] Nonetheless, during the Court's discussion with counsel prior to oral argument on May 1, 2015, the parties agreed that Defendant Kovack will not be questioned, unless and until authorized by the Court, regarding the criminal charges against him or the fact that he entered a no contest plea and a pre-trial diversion program. (Doc. No. 34.)