## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ANNETTE EHRLICH,** | ) | **CASE NO. 1:14cv2560** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **MICHAEL KOVACK** *et al,* | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| **Defendant.** | ) | |

Currently before the Court is Defendants Medina County, Medina County Commissioners, Michael Kovack and Joan Heller's Motion for Judgment on the Pleadings.[1] (Doc. No. 42.)  Plaintiff Annette Ehrlich filed a Brief in Opposition on August 10, 2015, to which Defendants replied.  (Doc. Nos. 46, 47.)

For the following reasons, Defendants' Motion (Doc. No. 42) is GRANTED IN PART and DENIED IN PART.

### I.  Procedural Background

On October 24, 2014, Plaintiff Annette Ehrlich filed a Complaint in the Medina County Court of Common Pleas against the following defendants: (1) Medina County Auditor Michael Kovack; (2) Medina County Chief Deputy Auditor Joan Heller; (3) Medina County; and, (4) the

---

[1]  This case is before the Court upon consent of the parties, entered December 1, 2014. (Doc. No. 6.)

Medina County Commissioners.[2]  (Doc. No. 1-3.)  The Complaint asserted the following five

claims: (1) violation of the Ohio Whistleblower Act, Ohio Rev. Code § 4113.52(B) (against

Defendant Kovack and the Medina County Defendants only); (2) First Amendment retaliation

under 42 U.S.C. § 1983 (against Defendant Kovack and the Medina County Defendants only);

(3) defamation (against Defendant Heller only); (4) malicious prosecution (against Defendant

Heller only); and, (5) intentional infliction of emotional distress (against all Defendants).

Defendants removed the action to this Court on November 20, 2014.  (Doc. No. 1.)  The

next day, Defendants Kovack and Heller, and the Medina County Defendants filed separate

Answers.  (Doc. Nos. 3, 4.)  On January 5, 2015, pursuant to Local Rule 16.3(b), a Parties'

Planning Report was filed.  (Doc. No. 9.)  Therein, the parties advised as follows:

> Upon information and belief, the Medina County Sheriff's Department is
> presently investigating Defendant Michael Kovack.  At this point in time,
> Defendant Kovack is unable to determine when the investigation will be
> concluded. As a result, Defendant Kovack may be required to seek a stay of any
> discovery directed to him until the investigation is concluded.  Should Defendant
> Kovack seek such a stay, and the Court determines that Defendant Kovack's stay
> request is granted; Plaintiff may be seeking a stay of all discovery until the
> completion of the investigation.

(Doc. No. 9 at 4.)

A case management conference was conducted on January 16, 2015, at which time

certain deadlines were set.  (Doc. No. 12.)  In addition, the Court ordered Defendants Kovack

and Heller to file a Report by March 16, 2015 updating the status of the criminal investigation of

Defendant Kovack and advising whether a stay of discovery would be necessary.  (Doc. No. 11.)

---

[2] Defendants Medina County and the Medina County Commissioners will hereinafter be
referred to as "the Medina County Defendants."

The Medina Municipal Court docket reflects that, on January 22, 2015, Defendant Kovack was charged with first degree misdemeanor violations of Ohio Revised Code § 9.03(D)(1) (Misuse of Public Funds) and Ohio Revised Code § 102.03(D) (Using a Public Office to Obtain Something of Value). *See State v. Kovack*, Medina Municipal Court No. 15CRB0085, Docket.  Kovack entered a plea of no contest and, on February 6, 2015, was referred to a pretrial diversion program pursuant to Ohio Revised Code § 2935.36. *Id*.

On February 12, 2015, Plaintiff served subpoenas on the Medina County Special Prosecutor and the Medina County Sheriff,[3] seeking the entire investigatory file regarding the underlying criminal case against Defendant Kovack.  (Doc. Nos. 15-1, 15-3.)  The Medina County Defendants moved to quash these subpoenas on both procedural and substantive grounds.  (Doc. No. 18.)

The Court conducted a status conference regarding the Medina County Defendants' Motion to Quash on February 26, 2015.  (Doc. No. 21.)  At that time, the Court ordered counsel for the Medina County Defendants to redact personal identifiers from the Medina County Sheriff report at issue and provide a copy of that report to Plaintiff by no later than March 30, 2015. *Id*. at 1.  The Court also indicated that issues relating to the information subpoenaed from the Medina County Special Prosecutor would be addressed at a later date, if necessary. *Id*. at 2.

On March 16, 2015, Defendants Kovack and Heller filed a Motion to Stay the instant case pending the conclusion of the criminal proceedings against him.  (Doc. No. 23.)  Plaintiff

---

[3] Plaintiff also subpoenaed the Medina County Engineer and the Medina County Gazette. (Doc. No. 13.)  She later withdrew the Gazette subpoena and subpoenaed Disqus, Inc. instead. (Doc. No. 15-2, 16.)  Disqus is a private company that provides a blog comment hosting service for web sites.

3

filed a Brief in Opposition (Doc. No. 24), to which Defendants Kovack and Heller replied.  (Doc. No. 29.)  On March 23, 2015, the Court ordered the Medina County Defendants to refrain from producing the Sheriff report at issue until after the Court had ruled on the pending Motion to Stay.  (Doc. No. 27.)

On May 1, 2015, the Court met with counsel to discuss the Motion to Stay, and oral argument was thereafter conducted on the record.  (Doc. No. 34.)  At that time, the Court denied the motion on the record, and indicated a written order would be forthcoming.  *Id.*  The parties then agreed to a Stipulated Protective Order containing an Attorney Eyes Only provision regarding the Medina County Sheriff Report at issue and submitted it for the Court's review. The Stipulated Protective Order was entered that day.[4]  (Doc. No. 35.) On May 5, 2015, the Court issued a Memorandum Opinion & Order denying Defendants Kovack and Heller's Motion to Stay.  (Doc. No. 36.)

On July 21, 2015, Defendants filed a joint Motion for Judgment on the Pleadings.  (Doc. No. 42.)  Plaintiff filed a Brief in Opposition on August 10, 2015 (Doc. No. 46), to which Defendants jointly replied.  (Doc. No. 47.)  Meanwhile, Defendants jointly filed another Motion to Stay Discovery, this time seeking a stay pending a ruling on their Motion for Judgment on the Pleadings.  (Doc. No. 43.)  Plaintiff did not oppose the motion.  On August 20, 2015, Defendants' Motion to Stay was granted as unopposed.

---

[4]  The Medina County Defendants were ordered to produce a redacted copy of the Sheriff Report to counsel for Plaintiff and counsel for Defendants Kovack and Heller, once the Stipulated Protective Order was entered.  Additionally, it was agreed that Defendant Kovack will not be questioned, unless and until authorized by the Court, regarding the criminal charges against him or the fact that he entered a no contest plea and a pre-trial diversion program.

## II.  Factual Allegations

The Complaint alleges the following.  Plaintiff was formerly employed as an Information Technology Manager in Defendant Kovack's Medina County Auditor's Office.  (Doc. No. 1-3 at ¶ 3.)  On July 21, 2011, Defendant Kovack provided his County laptop to Plaintiff for repairs.  *Id*. at ¶ 9.  While working on Defendant Kovack's computer, Plaintiff discovered "thousands of pornographic images" and reported her discovery to Defendant Kovack.  *Id.* at ¶ 10.  Defendant Kovack stated his son had used the computer and downloaded the images.  *Id.* at ¶ 11.

Years later, in September 2013, Plaintiff discovered Auditor's Office print logs indicating Defendant Kovack had printed campaign materials for his Wine and Cheese political fund raiser.  *Id*. at ¶ 12.  In February 2014, Plaintiff discovered Auditor's Office print logs indicating Defendant Kovack had printed campaign materials for his Chili Cook Off political fund raiser.  *Id.* at ¶ 13.

On March 19, 2014, Plaintiff presented a letter to Defendant Kovack,[5] reporting her discovery that he had used the County printer to print campaign literature.  *Id.* at ¶ 14.  This letter was copied to the Medina County Human Resources Department, as well as to Plaintiff's supervisors Defendant Heller and Lisa Nichols.  *Id.* at ¶¶ 14-15.  In addition, Plaintiff's letter (attached to the Complaint as Exhibit A) addressed Plaintiff's concerns about the denial of her request to use her vacation time to attend a computer training seminar ("Pictometry training").  In her letter, Plaintiff states she felt Defendants Kovack and Heller had been "picking on her;"

---

[5]  The letter itself, which is attached to the Complaint as Exhibit A, is dated March 18, 2014.  (Doc. No. 1-3 at pp. 13-14.) However, the Complaint states Plaintiff did not present to Defendant Kovack until the following day, March 19, 2014.

failing to treat her as a valued employee; and, creating a hostile work environment. (Doc. No. 1-3 at pp. 13-14.)

The next day, on March 20, 2014, Defendant Kovack, Defendant Heller, and Nichols met with Plaintiff and presented her with a letter dated March 17, 2014 scheduling a pre-disciplinary conference on March 21, 2014 regarding Plaintiff's "insubordination" relating to the Pictometry training incident. (Doc. No. 1-3 at ¶ 18). At the pre-disciplinary hearing, Defendant Kovack failed to address Plaintiff's allegation that Kovack "had committed a felony under Ohio law." *Id*. at ¶ 20. According to the Complaint, Kovack also failed to make a reasonable and good faith effort to correct his "felony violations of Ohio law" within twenty-four hours or the close of business on the next business day following receipt of Plaintiff's report. *Id*. at ¶ 21.

On March 20, 2014, Plaintiff filed a report with the Medina County Sheriff describing Defendant Kovack's alleged use of County resources to print campaign literature. *Id.* at ¶ 23. She allegedly included "proof" in this report. *Id.* at ¶ 24. At Plaintiff's disciplinary hearing, Defendant Kovack advised Plaintiff that he was probably going to suspend her for three days for the Pictometry training incident. *Id.* at ¶ 25. On March 24, 2014, Kovack advised Plaintiff that, instead of suspension, her punishment was to be a written reprimand for disrespect and insubordination. *Id.* at ¶ 26.

In July 2014, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") to care for her mother, who had been diagnosed with Lymphoma and was scheduled to undergo chemotherapy. *Id*. at ¶ 27. When she returned from leave on August 25, 2014, Defendant Kovack informed Plaintiff she was being placed on paid administrative leave without explanation until September 3, 2014. *Id*. at ¶ 28. Thereafter, in a letter dated August 29, 2014,

6

Defendant Kovack advised Plaintiff she was being placed on administrative leave until further notice and asked her to report to the Auditor's Office on September 5, 2014 to discuss concerns Kovack had prior to Plaintiff's FMLA leave. *Id.* at ¶ 29.

The meeting was conducted on September 5, 2014. During the meeting, "Kovack expressed concerns alleging that Ehrlich did not inform the Auditor's Office that Ehrlich was assisting another county department to set up Pictometry training, and that Ehrlich had collected the information regarding Kovack that Ehrlich previously provided to the Medina County Sheriff." *Id.* at ¶ 30. Plaintiff denied the allegations. *Id.* at ¶ 31. She remained on administrative leave following the meeting. *Id.* at ¶ 32.

On September 17, 2014, Medina County Gazette reporter Nick Glunt informed Plaintiff that the Auditor's Office had contacted him to request that he make a public records request for Plaintiff's employment file. *Id.* at ¶ 33. Glunt advised Plaintiff her employment file contained "interesting and defamatory" information, including information from Defendant Heller alleging Plaintiff had been violent on March 21, 2014. *Id.* at ¶ 34. The next day, September 18, 2014, Plaintiff went to the Auditor's Office; requested her employment file; and, asked Defendant Heller about the negative information "inserted" into her file. *Id.* at ¶ 36. Defendant Heller refused to answer. *Id.* at ¶ 37. Upon receipt of her employment file, Plaintiff discovered that "positive accolades regarding her employment performance had also been removed." *Id.* at ¶ 38.

That same day, Defendant Heller filed a Petition in the Medina County Court of Common Pleas for Civil Stalking Protection against Plaintiff, pursuant to Ohio Rev. Code § 2903.214. *Id.* at ¶ 40. Therein, Defendant Heller alleged Plaintiff had thrown papers at her; exhibited aggressive and agitated behavior; and, "taunted" her. *Id.* at ¶ 41. Defendant Heller also alleged

7

Plaintiff had requested FMLA leave for "anxiety issues."  *Id*. at ¶ 42.  At an *ex parte* hearing, Defendant Heller voluntarily dismissed the Petition.  *Id.* at ¶ 43.

On September 19, 2014, Defendant Kovack sent Plaintiff a pre-disciplinary hearing letter.  *Id*. at ¶ 44.  Plaintiff appeared for the hearing on September 26, 2014, at which time she was accused of being violent toward Defendant Heller on September 18, 2014.  *Id.* at ¶ 45.  Plaintiff's employment was terminated on September 27, 2014.  *Id.* at ¶ 46.

The Complaint alleges the following claims.  Count I alleges the Medina County Defendants and Defendant Kovack violated Ohio's Whistleblower Act, Ohio Rev. Code §4113.52, when they terminated Plaintiff in retaliation for reporting Defendant Kovack's use of County resources to print campaign literature.  Count II alleges § 1983 claims against the Medina County Defendants and Defendant Kovack based on these Defendants' alleged retaliation against Plaintiff for exercising her federal constitutional right to free speech and expression.  Count III alleges a defamation claim against Defendant Heller based on Heller's statement that Plaintiff was violent and took FMLA leave for "anxiety issues."  Count IV alleges a malicious prosecution claim against Defendant Heller on the basis that Heller's Petition for Civil Stalking Protection was "made with malice and without probable cause."  Count V alleges intentional infliction of emotional distress claims against all Defendants.

### III.  Legal Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is

8

nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (*quoting in part Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (*quoting in part Twombly*, 550 U.S. at 555-556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only 'give the defendant fair notice

9

of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (*quoting in part Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (*quoting Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV. Analysis

### A. Whistleblower Claim (Count I)

In her first claim, Plaintiff asserts Defendant Kovack and the Medina County Defendants terminated her employment "in retaliation for [Plaintiff's] filing of reports pursuant to R.C. 4113.52(A)(1)(a) and R.C. 4113.52(A)(1)(b)." (Doc. No. 1-3 at ¶ 48.) Plaintiff further alleges that "[t]he Defendants' actions in terminating [her] employment are in violation of R.C. 4113.52(B)" and, thus, she is "entitled to bring a civil action for relief as set forth in R.C. 4113.52(D) for the relief set forth in R.C. 4113.52(E)." *Id.* at ¶¶ 49, 51.

Defendants argue this claim fails as a matter of law. Specifically, Defendants assert the whistleblower statute relied on by Plaintiff, Ohio Rev. Code § 4113.52, provides protection for *private* sector employees who report information about their employer. (Doc. No. 42 at 10.) Because Plaintiff worked for Medina County, Defendants maintain the applicable statute for Plaintiff's claim is Ohio Rev. Code § 124.341, which provides whistleblower protections for *public* sector employees. *Id.* Defendants argue that "Plaintiff's sole and exclusive remedy for claimed whistleblower violations was to seek relief through R.C. § 124.341 and file an appeal with the [State Personnel Board of Review]." *Id.* at 11. Because Plaintiff failed to do so, and the

10

deadline has now expired, Defendants argue the remedies contained within § 4113.52 "are not available to Plaintiff" as a matter of law and her whistleblower claim should be dismissed.

While Plaintiff acknowledges that "[a] terminated employee may not seek redress under both statutes," she maintains "it is incorrect to assume that the terminated employee's action necessarily falls under the parameters of R.C. 124.341 because the employee is a public sector employee."  (Doc. No. 46 at 11.)  Highlighting the differences between the two statutes, Plaintiff argues § 4113.52 applies to public sector employees and areas not covered by § 124.341.  *Id*. at 12.  She maintains Ohio courts have found "the nature of the 'wrongdoing' reported is dispositive" in determining which statute applies.  Because the Complaint alleges wrongdoing constituting a felony, Plaintiff asserts Ohio law allows her to assert a claim under § 4113.52 even though she was a public sector employee.

Ohio Revised Code Section 4113.52 provides, in pertinent part, as follows:

(A)(1)(a) **If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct,** *and* **the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony**, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

11

(b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard.

* * *

(B) Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division.  No employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division. For purposes of this division, disciplinary or retaliatory action by the employer includes, without limitation, doing any of the following:

(1) Removing or suspending the employee from employment;

* * *

(D) **If an employer takes any disciplinary or retaliatory action against an employee as a result of the employee's having filed a report under division (A) of this section, the employee may bring a civil action for appropriate injunctive relief or for the remedies set forth in division (E) of this section, or both, within one hundred eighty days after the date the disciplinary or retaliatory action was taken, in a court of common pleas in accordance with the Rules of Civil Procedure.  A civil action under this division is not available to an employee as a remedy for any disciplinary or retaliatory action taken by an appointing authority against the employee as a result of the employee's having filed a report under division (A) of section 124.341 of the Revised Code.**

* * *

Ohio Rev. Code § 4113.52 (emphasis added).

12

Courts interpreting the above statute have found that, "[t]o prove a claim under § 4113.52, a plaintiff must show that: (1) he is entitled to protection under the [Whistleblower] act; (2) he was subject to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Dobrski v. Ford Motor Company*, 698 F.Supp.2d 966, 978 (N.D. Ohio 2010).  *See also Klepsky v. United Parcel Service, Inc.*, 489 F.3d 264, 271 (6th Cir. 2007).  With regard to the first of these elements, § 4113.52 sets forth three circumstances in which an employee is protected for whistleblowing activity: Section (A)(1) addresses reports of violations of law "that the employee's employer has authority to correct;" Section (A)(2) deals with the reporting of criminal violations of the State's environmental laws; and Section (A)(3) addresses an employee's complaints of "violations by a fellow employee." *See* Ohio Rev. Code § 4113.52(A).

Here, the Complaint alleges Plaintiff's employment was terminated "in retaliation for [Plaintiff's] filing of reports pursuant to R.C. 4113.52(A)(1)(a) and R.C. 4113.52(A)(1)(b)." (Doc. No. 1-3 at ¶ 48.)  For claims under § 4113.52(A)(1), an employee must have a reasonable belief that the violation is either a felony or "a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety."  *See* § 4113.52(A)(1)(a); *Dobrski*, 698 F.Supp.2d at 979.  The employee is then required to "orally notify his or her supervisor or other responsible officer of the employer of the violation *and* subsequently file with that person a written report that provides sufficient detail to identify and describe the violation."  *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 652 N.E.2d 940, 943 (1995) (emphasis in original).  If the employee satisfies these requirements, and the employer fails to correct the violation or to make a good faith effort to correct the violation within

13

twenty-four hours after the oral notification or the receipt of written notice, whichever is earlier, the employee may file a written report with the prosecutor, peace officer, inspector general or certain other appropriate persons identified in § 4113.52(A)(1)(a).  Failure to strictly comply with these statutory requirements "prevents the employee from claiming the protections embodied in the statute."  *Contreras,* 652 N.E.2d at syllabus.

The language of Ohio Revised Code §124.341 is somewhat different than § 4113.52. Section 124.341 provides, in pertinent part, as follows:

> (A) **If an employee in the classified or unclassified civil service becomes aware in the course of employment of a violation of state or federal statutes, rules, or regulations or the misuse of public resources, and the employee's supervisor or appointing authority has authority to correct the violation or misuse, the employee may file a written report identifying the violation or misuse with the supervisor or appointing authority.**  In addition to or instead of filing a written report with the supervisor or appointing authority, the employee may file a written report with the office of internal audit created under section 126.45 of the Revised Code or file a complaint with the auditor of state's fraud-reporting system under section 117.103 of the Revised Code.
>
> If the employee reasonably believes that a violation or misuse of public resources is a criminal offense, the employee, in addition to or instead of filing a written report or complaint with the supervisor, appointing authority, the office of internal audit, or the auditor of state's fraud-reporting system, may report it to a prosecuting attorney, director of law, village solicitor, or similar chief legal officer of a municipal corporation, to a peace officer, as defined in section 2935.01 of the Revised Code, or, if the violation or misuse of public resources is within the jurisdiction of the inspector general, to the inspector general in accordance with section 121.46 of the Revised Code.  In addition to that report, if the employee reasonably believes the violation or misuse is also a violation of Chapter 102., section 2921.42, or section 2921.43 of the Revised Code, the employee may report it to the appropriate ethics commission.
>
> (B) Except as otherwise provided in division (C) of this section, no officer or employee in the classified or unclassified civil service shall take any disciplinary action against an employee in the classified or unclassified civil service for making any report or filing a complaint as authorized by division (A) of this section, including, without limitation, doing any of the following:

14

(1) Removing or suspending the employee from employment;

* * *

(D) **If an appointing authority takes any disciplinary or retaliatory action against a classified or unclassified employee as a result of the employee's having filed a report or complaint under division (A) of this section, the employee's sole and exclusive remedy, notwithstanding any other provision of law, is to file an appeal with the state personnel board of review within thirty days after receiving actual notice of the appointing authority's action.** If the employee files such an appeal, the board shall immediately notify the employee's appointing authority and shall hear the appeal.  The board may affirm or disaffirm the action of the appointing authority or may issue any other order as is appropriate.  **The order of the board is appealable in accordance with Chapter 119. of the Revised Code.**

Ohio Rev. Code § 124.341 (emphasis added).

As noted above, Defendants herein argue that Plaintiff, as a public sector employee, was required to bring her claim under §124.341 (rather than § 4113.52) and to file an appeal with the state personnel board of review.  Because she did not do so, Defendants maintain her claim fails as a matter of law.  Relying on *Robins v. State, Ohio Dept. of Liquor Control*, 1996 WL 362067 (10th App. Dist. June 25, 1996), Plaintiff asserts she was entitled to bring her claim under § 4113.52 because she had a good faith belief that Defendant Kovack had committed a felony, a circumstance which is expressly accounted for in § 4113.52 but not in § 124.341.

In *Robins*, the plaintiff asserted he was terminated from his position as deputy director of enforcement at the State of Ohio, Department of Liquor Control because he had reported or "caus[ed] to be made known what he believed possible and inappropriate and/or possible illegal conduct on the part of others including his supervisors and/or superiors."  *Robins*, 1996 WL 362067 at * 1.  Defendants moved to dismiss under Ohio Civ. R. 12(b)(1), (b)(2), and (b)(6).  In response, plaintiff relied on § 4113.52, asserting it provided him a remedy for wrongful

15

termination.  Defendants "countered with the language of R.C. 4113.52(D), asserting plaintiff's sole remedy lay in the provisions of R.C. 124.341." *Id.*

The state trial court granted defendants' motion, finding plaintiff's claim "necessarily fell within the parameters of R.C. 124.341, and pursuant to the mandate of R.C. 4113.52(D) a civil action was not available to plaintiff." *Id.*  The state appellate court reversed, explaining as follows:

> Generally, R.C. 124.341 and 4113.52 provide remedies to an employee who is terminated in retaliation for the employee's disclosing specified wrongdoing in the workplace.  R.C. 124.341 applies to state employees in the classified or unclassified civil service.  R.C. 4113.52 applies to employees as defined in R.C. 4113.51(A), and includes "any person who performs a service for wages or other remuneration for an employer."  "Employer," in turn, is defined under R.C. 4113.51(B) to include "the state or any agency or instrumentality of the state, and any municipal corporation, county, township, school district, or other political subdivision or any agency or instrumentality thereof."  Given those definitions, both R.C. 124.341 and 4113.52 may apply to state employees, including plaintiff. Further, while each section provides a separate statutory remedy to terminated employees, provisions in each nonetheless prevent an employee from pursuing remedies under both.  Specifically, R.C. 4113.52(D) provides:

> " * * * A civil action under this division is not available to an employee as a remedy for any disciplinary or retaliatory action taken by an appointing authority against the employee as a result of the employee's having filed a report under division (A) of section 124.341 of the Revised Code."

> Similarly, in compatible language, R.C. 124.341(D) provides:

> "If an appointing authority takes any disciplinary or retaliatory action against a classified or unclassified employee as a result of the employee's having filed a report under division (A) of this section, the employee's sole and exclusive remedy, notwithstanding any other provision of law, is to file an appeal with the state personnel board of review within thirty days after receiving actual notice of the appointing authority's action. * * * " (Emphasis added.)

> **As a result, although the trial court correctly concluded a terminated employee may not seek redress under both statutes, it incorrectly assumed plaintiff's action necessarily falls under the parameters of R.C. 124.341**

**because he was a state employee.  Rather, in determining whether plaintiff is limited to the remedies set forth in R.C. 124.341, we must examine the specifics of each section.**

The scope of R.C. 124.341 is clearly different than that of R.C. 4113.52.  For example, R.C. 124.341 concerns violations only of state or federal statutes, rules or regulations, or the misuse of public resources.  However, unlike R.C. 4113.52, it does not limit violations of those statutes, rules or regulations to specific instances of felony conduct or circumstances likely to cause imminent harm to persons or a hazard to public health or safety.  By contrast, R.C. 4113.52 embraces violations of more than state or federal statute, and includes ordinances or regulations of a political subdivision.  However, with the exception of those violations specified in R.C. 4113.52(A)(2), the violation alone is insufficient to trigger the remedy provided; rather, the violation must also be either a felony or present a criminal offense likely to cause imminent risk of physical harm to persons or a hazard to public health or safety.  Moreover, while R.C. 124.341(A) provides that the employee may file a written report with the employee's supervisor identifying the violation or misuse, R.C. 4113.52(A), with the exception of R.C. 4113.52(A)(2), requires that the employee file with the supervisor a written report that provides sufficient detail to identify and describe the alleged violation.

**Because R.C. 4113.52 covers state employees and areas not covered by R.C. 124.341, the nature of the "wrongdoing" reported is dispositive.**

*Id*. at * 1-2 (emphasis added).  The court went on to find that "plaintiff's allegations are very general" and "we are unable to ascertain [from the face of the complaint] whether his report was filed pursuant to R.C. 124.341(A) or R.C. 4113.52(A)."  *Id.* at * 2.  Thus, the court found it could not yet determine whether his complaint under R.C. 4113.52 was precluded and remanded the case to the state trial court for further proceedings.  *Id.*

Defendants acknowledge that *Robins* "stands for the proposition that public sector employees *may* have remedies under either R.C. 124.341 or 4113.52" and that "the applicable statute . . . depends on the nature of the 'wrongdoing' that the plaintiff is reporting."  (Doc. No. 47 at 2.)  However, Defendants maintain that "[i]t is only when 124.341(A) fails to apply because a plaintiff engaged in whistleblowing not otherwise included in 124.341(A) that 4113.52 becomes

17

available as a potential remedy to public sector employees." *Id*. at 3.  Defendants go on to assert that Plaintiff's alleged whistleblowing activity "very clearly fell within the scope of that described in 124.341(A)" and, therefore, her sole and exclusive remedy was under that statute.

Here, the Complaint alleges that Plaintiff "presented her employer Kovack with a letter reporting to Kovack that she had discovered that Kovack had printed his 'Auditor Kovack Chili Cook Off' campaign literature from the Medina County Auditor's Office computers and printers" and that "[t]he use of public resources to produce campaign literature is a felony under Ohio law." (Doc. No. 1-3 at ¶¶ 14, 17.)  The Complaint further alleges that "Kovack failed to correct or make a reasonable and good faith effort to correct Kovack's felony violations of Ohio law within twenty-four (24) hours or the close of business on the next business day following the receipt of Ehrlich's report." *Id*. at ¶ 21.  Plaintiff then claims that "[i]n compliance with R.C. 4113.52(A)(1)(a), Ehrlich also filed a report describing Kovack's unlawful use of the Auditor's Office resources to produce Kovack's campaign literature with the Medina County Sheriff." *Id*. at ¶ 23.  The report submitted by Ehrlich to the Sheriff (attached to the Complaint as Exhibit D) specifically references § 4113.52. *Id*. at Exh. D.  Finally, Plaintiff claims that Defendants later "terminated Ehrlich's employment in retaliation for Ehrlich's filing of reports pursuant to R.C. 4113.52(A)(1)(a) and R.C. 4113.52(A)(1)(b)." *Id*. at ¶ 48.

Thus, the Complaint clearly alleges that Plaintiff reported Kovack's alleged use of County resources to print campaign materials because she believed Kovack's actions constituted a felony under Ohio law.  As set forth above, § 4113.52(A)(1)(a) contains language expressly protecting employees who report activities they reasonably believe constitute a felony, while § 124.341 does not.  Defendants nevertheless suggest that Plaintiff's claim should be dismissed because §

18

124.341 references situations where "an employee reasonably believes that a violation or misuse of public resources is a criminal offense"and, therefore, Plaintiff could have sought a remedy under § 124.341.  Defendants assert that "124.341(D) and 4113.52(D) define the primacy of 124.341(A)– it applies first and exclusively 'notwithstanding any other provision of law' when it can be applied."  (Doc. No. 47 at 3.)

While reports regarding the misuse of public resources fall within the language of both statutes, only § 4113.52 expressly covers situations where an employee reasonably believes that the suspected wrongdoing constitutes a felony.[6]  Here, the Complaint clearly alleges that Plaintiff believed Defendant Kovack's use of the Auditor's Office printers to print campaign materials constituted a felony under Ohio law.  Defendants cite no case law indicating that a public sector employee is limited to § 124.341 where she believes her supervisor's actions constitute a felony.  Indeed, this Court has found at least one case where a state trial court rejected the argument that a state employee's sole and exclusive remedy was § 124.341, where the employee asserted a claim under § 4113.52 that he was wrongfully terminated after reporting that his supervisor submitted falsified time sheets charging state time to personal campaign activities.  *See Dargart v. Ohio Department of Transportation*, 171 Ohio App.3d 439, 442 fn 2 (Ohio App. 6th Dist. 2006) (explaining as follows: "ODOT maintained that appellant's sole remedy was an appeal to the State Personnel Board of Review under R.C. 124.341(D).  Appellant argued that depending upon the type of violation allegedly admitted by the state agency or instrumentality, he was provided

---

[6] Although Kovack was charged with (and pled no contest to) misdemeanor violations of Ohio Rev. Code § 9.03(D)(1) and § 102.03(D), it would not be unreasonable to believe Kovack's conduct might violate other statutes, such as theft in office in violation of Ohio Rev. Code § 2921.41, which is a felony offense.  *See* Ohio Rev. Code § 2921.41(B).

with alternate remedies under R.C. 4113.52 and 124.341.  The trial court found in favor of appellant on this issue.")[7]

Accordingly, the Court rejects Defendants' argument that Plaintiff's "sole and exclusive" remedy under the circumstances presented was to pursue a claim under § 124.341.  Thus, Defendants' motion for judgment on the pleadings with respect to Plaintiff's whistleblower claim under § 4113.52 is denied.

**B.     Section 1983 First Amendment Retaliation Claim (Count Two)**

To maintain a claim under § 1983, a plaintiff must establish that she was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  The first step in any such claim is to identify the specific constitutional right allegedly infringed.  *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Baker*, 443 U.S. at 140.

Here, the Complaint alleges that "Ehrlich's speech and expression in revealing Kovack's unlawful acts as stated above was speech involving a matter of public concern as Kovack is an elected public official."  (Doc. No. 1-3 at ¶ 53.)  The Complaint further alleges that Ehrlich's

---

[7]  While the trial court in *Dargart* ruled in favor of the plaintiff employee on the issue of the availability of § 4113.52 as a remedy, it ultimately dismissed plaintiff's case for unrelated reasons.  Plaintiff appealed the trial court's dismissal of his case on these unrelated grounds, and the issue of whether § 4113.52 or § 124.341 applied was not before the state appellate court. *Dargart*, 171 Ohio App.3d at 442-443.

speech and expression "was made as a private citizen outside of Ehrlich's duties with the Auditor's Office" and that it "outweighs any government interest relating to the operation of the Auditor's Office."  *Id.* at ¶¶ 54, 55.  Plaintiff then claims that "[t]he Defendants, Kovack, the Auditor's Office, the County and the Commissioners acting under the color of law, took actions which were in violation of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and the State of Ohio Constitution as said actions constituted retaliation against the Plaintiff for exercising her constitutional right of free speech and expression."  *Id.* at ¶ 56.  Plaintiff further alleges Defendants' retaliatory conduct was the proximate cause of her damages.  *Id.* at ¶ 57.

Thus, Plaintiff's § 1983 claim is predicated on the allegation that Defendants terminated her employment in retaliation for her exercise of speech and expression protected under the First Amendment.  To succeed on a First Amendment retaliation claim, the following elements must be proven: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010).  *See also Paterek v. Village of Armada, Mich.*, ----- F.3d ------ , 2015 WL 5210554 at * 12 (6th Cir. Sept. 8, 2015); *Scarborough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

### 1.  *Elrod/Branti* Exception:  Policymaking or Confidential Employee

Defendants first maintain that Plaintiff's March 18, 2014 and March 20, 2014 letters regarding Defendant Kovack's alleged misuse of County resources are not "constitutionally protected" speech under the First Amendment because Plaintiff constitutes a "confidential or

policymaking employee" under the Supreme Court's decisions in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).  Plaintiff disagrees and asserts that, in her position as "Information Technology Manager" for the Medina County Auditor's Office, she had no policy-making authority and did not serve as a confidential advisor to Defendant Kovack.  Thus, Plaintiff argues the so-called *"Elrod/Branti* exception" does not apply and her speech is protected by the First Amendment.

The Sixth Circuit employs a two-part inquiry to determine whether the discharge of a public employee violates the First Amendment.  *See e.g., Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002); *Latham v. Office of the Attorney General of the State of Ohio*, 395 F.3d 261, 265 (6th Cir. 2005).  The threshold question is "whether the employee's 'speech may be fairly characterized as constituting speech on a matter of public concern.'"  *Rose*, 291 F.3d at 920 (quoting *Dambrot v. Central Michigan University*, 55 F.3d 1177, 1186 (6th Cir. 1995)).  *See also Silberstein v. City of Dayton*, 440 F.3d 306, 318 (6th Cir. 2006).  If the speech relates to a matter of public concern, the court employs the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), "to determine if the employee's free speech interests outweigh the efficiency interests of the government as an employer."  *Rose*, 291 F.3d at 920.

However, "[w]hile *Pickering* provides the basic framework for analyzing a § 1983 First Amendment claim, this circuit employs a different test when a claim is brought by an employee who held a policymaking or confidential position."  *Silberstein*, 440 F.3d at 319.  Specifically, in *Rose v. Stephens, supra*, the Sixth Circuit held that "where a confidential or policymaking public

22

employee is discharged on the basis of speech related to [her] political or policy views, the *Pickering* balance favors the government as a matter of law."  *Rose*, 291 F.3d at 921.  As another Court in this District observed, "[t]his holding is an extension of the *Elrod/Branti* line of cases, in which the Supreme Court recognized that, although patronage dismissals ordinarily are unconstitutional, a public employer may terminate a public employee in a policymaking or confidential position solely because of her political affiliation without violating the First Amendment."  *Marsilio v. Vigluicci*, 924 F.Supp.2d 837, 849 (N.D. Ohio 2013).

The Supreme Court has observed that "no clear line can be drawn between policymaking and non-policymaking positions."  *Elrod*, 427 U.S. at 367.  In an effort to clarify this determination, the Sixth Circuit has articulated four categories of employees who will always fall within the *Elrod/Branti* policymaking or confidential employees exception:

> **Category One**: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> **Category Two**: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
>
> **Category Three**: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors; and
>
> **Category Four**: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*Latham*, 395 F.3d at 267 (citing *McCloud v. Testa*, 97 F.3d 1536, 1557-1558 (6th Cir. 1996)).
*See also Silberstein*, 440 F.3d at 319; *Rose*, 291 F.3d at 924; *Marsilio*, 924 F.Supp.2d at 850-851.  "In determining whether an employee falls into one of these categories, [courts] must examine the inherent duties of the position, rather than the actual tasks undertaken by the employee."  *Latham*, 395 F.3d at 267.  *See also Silberstein*, 440 F.3d at 319; *Williams v. City of River Rouge*, 909 F.2d 151, 155 (6th Cir. 1990); *Monks v. Marlinga*, 923 F.2d 423, 425  (6th Cir. 1991) (stating that the "relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office").

Here, Defendants maintain that, as Medina County Auditor, Defendant Kovack constitutes a Category One policymaker.  Defendants then assert Plaintiff's "role as the Information Technology Manger, as alleged in her Complaint, absolutely meets [the] criteria" for a Category Three confidential employee.  (Doc. No. 42 at 14.)  Relying on cases finding that elected officials' secretaries, law clerks, and bailiffs constitute Category Three employees, Defendants maintain Plaintiff falls within this category because she had "exclusive and pervasive access to all of Mr. Kovack's electronic communications and files."  *Id*.  Indeed, Defendants assert that "[o]ne could not fathom a greater saturation of access to an elected official's communications than the one alleged by Plaintiff– the degree of confidentiality is substantially greater than the positions the Sixth Circuit has already held lacked First Amendment protection."  *Id.*

Plaintiff notes "there is nothing in [the] Complaint to substantiate" Defendants' assertion that Plaintiff had "exclusive and pervasive access" to all of Kovack's electronic communications.  (Doc. No. 46 at 15.)  Moreover, Plaintiff asserts she did not control the lines of

24

communication to Kovack, arguing that "[c]ommunications from Kovack or to Kovack did not flow through Ehrlich, or require Ehrlich's review in order to reach its requested destination." *Id.* Plaintiff further claims she does not constitute a Category Three employee because she "had no control of Kovack's calendar, email or telephone, such as are the required duties of a personal secretary, law clerk or personal bailiff." *Id.*  Finally, Plaintiff argues that "access to Kovack's computer and email communications do not establish Ehrlich was a 'confidential policymaking employee' as contemplated in the four categories" set forth above.  *Id.* at 15-16.

The Court finds that, at this stage in the litigation, it cannot say Plaintiff constitutes a Category Three confidential or policymaking employee for purposes of the *Elrod/Branti* exception as a matter of law.  As noted *supra,* in determining whether Plaintiff's First Amendment claim should be dismissed under Rule 12(c), this Court is limited to the allegations in the Complaint and the documents attached thereto.  There is nothing in the record currently before the Court that describes the "inherent duties" of Plaintiff's position as Information Technology Manager for the Medina County Auditor's Office.  Moreover, Defendants do not direct this Court's attention to any authorizing statute or written job description that defines the duties of the position of "Information Technology Manager" for a County Auditor's Office.

Defendants, however, argue that the Complaint alleges Plaintiff had "exclusive and pervasive access to all of Mr. Kovack's electronic communications and files;" "complete access to Kovack's laptop;" and that she occupied a "unique position to review all of [Kovack's] email communications." (Doc. No. 42 at 14.)  In addition, Defendants point to references in documents attached to the Complaint that they allege indicate Plaintiff had "access and the

25

ability to review print logs (ECF 1-3, Exs. D, E), and both work files and personal files that were unrelated to work (ECF 1-3, ¶¶ 10-14.)"  (Doc. No. 47 at 5.)

As an initial matter, the Court does not construe the Complaint as alleging Plaintiff had "exclusive and pervasive access to all of Kovack's electronic communications and files." Rather, the Complaint asserts only that: (1) in July 2011, Defendant Kovack "provided the County's Dell laptop computer to Ehrlich for repairs and Ehrlich backed up the computer data to an Auditor's Office external hard drive;" and, (2) Plaintiff discovered Auditor's Office print logs in September 2013 and February 2014 that allegedly showed Kovack had printed campaign materials using County resources.  (Doc. No. 1-3 at ¶¶ 9, 12-13.)  Attachments to the Complaint also indicate Plaintiff backed up Defendant Kovack's county laptop on at least one occasion at his request and  "reviewed logs for our print server as part of my job as Network Administrator." (Doc. No. 1-3, Exh. D.)  Contrary to Defendants' assertions, the Court finds that none of these allegations suggest Plaintiff had "exclusive access" to all of Kovack's electronic communications and files.  Moreover, to the extent Plaintiff had access to Kovack's County laptop, the Complaint and its attachments suggest such access was limited to those occasions when Defendant Kovack asked Plaintiff to repair or "back up" his laptop.  The frequency of these requests is not clear from the Complaint.

More importantly, regardless of any allegations in the Complaint regarding the particular tasks Plaintiff may have performed while employed at the Auditor's Office, Defendants do not direct this Court's attention to anything in the record that sheds light on the "inherent duties" of Plaintiff's position; i.e., Information Technology Manager.  As noted above, in determining whether a plaintiff constitutes a confidential or policymaking employee for purposes of the

26

*Elrod/Branti* exception, the "relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." *Monks,* 923 F.2d at 425.  *See also Latham*, 395 F.3d at 267; *Silberstein*, 440 F.3d at 319; *Williams,* 909 F.2d at 155.  Here, the current record is devoid of any information regarding the "inherent duties of the position in question."  Thus, the Court finds it is unable, at this stage in the litigation, to render a determination as to whether Plaintiff constituted a confidential or policymaking employee for purposes of *Elrod/Branti.  See e.g. McCloud*, 97 F.3d at 1558 (noting that "in the situation where the inherent duties of the plaintiffs' positions are not apparent and the facts are not yet fully developed, it is not possible for us to decide, when reviewing in an interlocutory posture the denial of a motion for summary judgment, whether a defendant should be granted qualified immunity").

Accordingly, the Court rejects as premature Defendants' argument that Plaintiff is not entitled to First Amendment protection because she constituted a confidential or policymaking employee under *Elrod/Branti*.[8]

### 2.    Duty Speech

Defendants acknowledge Plaintiff's allegation that she was acting as a private citizen when she reported Defendant Kovack's suspected wrongdoing to the Medina County Sheriff. Defendants argue, however, that "to the extent Plaintiff could allege that her speech was taken as part of her work duties – and was not private speech– it would still lack protection because the First Amendment does not shield public employees from discipline related to expressions made

---

[8]  Because the Court cannot yet determine whether Plaintiff is a confidential or policymaking employee for purposes of the *Elrod/Branti* exception, there is no need to address Defendants' argument that Plaintiff's speech was related to political or policy views.

27

by employees pursuant to their professional duties."  (Doc. No. 42 at 19.)  Defendants maintain that, because Plaintiff discovered Defendant Kovack's alleged conduct while performing her work duties, her subsequent reporting of that conduct is deemed duty speech and is not protected by the First Amendment.  *Id.*

Plaintiff's Brief in Opposition is not clear, but it does appear to suggest that Plaintiff's act of reporting Defendant Kovack's suspected wrongdoing does not constitute duty speech because she reported it "outside the chain of command" to the Medina County Sheriff.  (Doc. No. 46 at 17.)

The Supreme Court has explained that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).  *See also Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).  To establish that speech is constitutionally protected, a public employee must show that (1) her speech was made as a private citizen, rather than pursuant to her official duties; (2) her speech involved a matter of public concern; and (3) her interest as a citizen in commenting on the matter outweighed the state's interest, as an employer, in "'promoting the efficiency of the public services it performs through its employees.'"  *Handy-Clay v. City of Memphis, Tenn*., 695 F.3d 531, 540 (6th Cir. 2012) (quoting *Garcetti*, 547 U.S. at 417).  *See also Westmoreland v. Sutherland*, 662 F.3d 714, 719 (6th Cir. 2011).

With respect to the first of these three elements, the Sixth Circuit has explained as follows:

> The Supreme Court recently clarified what it means for a public employee to speak as a "citizen" for First Amendment purposes in *Garcetti*.  The Court

observed that "when public employees make statements pursuant to their
official duties, the employees are not speaking as citizens for First
Amendment purposes." *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951.  Justice
Kennedy explained:

> Restricting speech that owes its existence to a public employee's
> professional responsibilities does not infringe any liberties the
> employee might have enjoyed as a private citizen. It simply reflects
> the exercise of employer control over what the employer itself has
> commissioned or created.

*Id.* at 421–22, 126 S.Ct. 1951 (citation omitted).  We thus look to the content
and context of the plaintiff's speech to determine whether her statements were
made pursuant merely to her professional duties.  *Fox v. Traverse City Area
Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir.), *cert. denied*, —— U.S.
——, 131 S.Ct. 643, 178 L.Ed.2d 478 (2010).

[8]  We have identified a number of factors to consider in this determination,
including "the impetus for her speech, the setting of her speech, the speech's
audience, and its general subject matter."  *Weisbarth v. Geauga Park Dist.*,
499 F.3d 538, 546 (6th Cir. 2007).  Relevant considerations include whether
the statements were made to individuals "up the chain of command," *Fox*, 605
F.3d at 350 (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)),
and whether the content of the speech is "nothing more than 'the
quintessential employee beef: management has acted incompetently.'"
*Haynes v. City of Circleville*, 474 F.3d 357, 365 (6th Cir. 2007) (quoting
*Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988)).  Factors that may be
relevant but are not dispositive include whether the speech was made inside or
outside of the workplace and whether it concerned the subject-matter of the
speaker's employment.  *See Garcetti*, 547 U.S. at 420, 126 S.Ct. 1951
("Employees in some cases may receive First Amendment protection for
expressions made at work."); *id.* at 421, 126 S.Ct. 1951 ("The First
Amendment protects some expressions related to the speaker's job.").

*Handy-Clay*, 695 F.3d at 540-541.  *See also Keeling v. Coffee County, Tenn.*, 541 Fed. Appx.

522, 526 (6th Cir. 2013).

In their Reply Brief, Defendants point to allegations within the Complaint that: (1) on

February 28, 2014, Plaintiff was directed to move an office printer to another location; (2) as a

result of this direction, she conducted a study using the print server logs to see how many jobs

were being sent to that printer on March 3, 2014; (3) while conducting that study, Plaintiff

noticed that Defendant Kovack had sent documents to the printer about a personal campaign

fund raiser; and, (4) Plaintiff thereafter sent a letter to Defendant Kovack stating that, during the

course performing that study, she noticed that he had utilized office printers to print campaign

literature.  (Doc. No. 47 at 9) (citing Doc. No. 1-3, Exh. D.)  Based on these allegations,

Defendants assert that "[t]his discovery was made pursuant to her official duties; and her

subsequent report of that discovery therefore occurred within the course of Plaintiff's

employment duties."  (Doc. No. 47 at 9.)  Thus, Defendants assert Plaintiff's speech does not

constitute constitutionally protected speech under *Garcetti, supra.*

The Court disagrees, and finds *Garcetti* to be distinguishable from the instant case.  In

*Garcetti*, plaintiff Richard Ceballos had been employed as a calendar deputy district attorney for

the Los Angeles County District Attorney's Office.  *Garcetti*, 547 U.S. at 413.  A defense

attorney contacted Ceballos and expressed concern about possible inaccuracies in an affidavit

that had been used to obtain a critical search warrant in one of the cases the District Attorney's

Office was actively prosecuting.  *Id*. at 414.  Ceballos investigated and wrote a memo to his

supervisor that expressed concerns over the affidavit.  *Id.*  Ceballos' supervisor nevertheless

decided to continue prosecuting the case, and Ceballos was ultimately called by the defense to

testify about his concerns over the warrant.  *Id.* at 414-415.  Ceballos was thereafter subjected to

a series of allegedly retaliatory employment actions, including reassignment, transfer to another

courthouse, and denial of a promotion.  *Id*. at 415.

The Supreme Court found Ceballos' speech was not protected under the First

Amendment, explaining as follows:

30

**The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy**. See Brief for Respondent 4 ("Ceballos does not dispute that he prepared the memorandum 'pursuant to his duties as a prosecutor' "). **That consideration—the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case—distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline.** We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.

**Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do.** It is immaterial whether he experienced some personal gratification from writing the memo; his First Amendment rights do not depend on his job satisfaction. **The significant point is that the memo was written pursuant to Ceballos' official duties**. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created. *Cf. Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) ("[W]hen the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes"). * * *

Ceballos did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings. In the same way he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case. When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance.

*Id*. at 421-422 (emphasis added).

The Court finds an important distinction between Ceballos' memo to his supervisor in *Garcetti*, and Plaintiff's March 18 and March 20, 2014 letters reporting Defendant Kovack's alleged misuse of County resources herein. As the Supreme Court noted above, both Ceballos' acts of investigating the search warrant affidavit and writing a memo expressing his concerns, were made pursuant to his official duties as a calendar deputy to advise his supervisor regarding

31

how to proceed with a pending criminal case.  In the instant case, however, there is no indication (and Defendants do not argue) that Plaintiff's *speech* was made pursuant to her job duties as Information Technology Manager.  While the Complaint could be construed as alleging that Plaintiff's *discovery* of Kovack's conduct was made as a result of her job duties (i.e, reviewing print logs as part of a print study), there is no allegation that Plaintiff's act of *reporting* that discovery was pursuant to her job duties, particularly with respect to her March 20, 2014 letter reporting Defendant Kovack's misconduct to the Medina County Sheriff.[9]

In this regard, the Court finds the instant case to be analogous to *Handy-Clay, supra*.  In that case, plaintiff Bridgett Handy-Clay was appointed as public records coordinator for the City of Memphis.  *Handy-Clay*, 695 F.3d at 535.  During her employment, she became concerned about a number of issues, including the possible violation of city policies regarding absences, leave, and pay.  *Id*. at 541.  Handy-Clay expressed these concerns to her supervisor, and her employment was subsequently terminated.  *Id*. at 537.  She then filed a complaint alleging (among other things) a § 1983 claim for violation of her First Amendment rights.  *Id.*  The district court dismissed Handy-Clay's First Amendment claim for failure to state a claim upon which relief could be granted on the grounds that Handy-Clay had failed to plead with sufficient particularity that she had spoken as a private citizen addressing matters of public concern and not merely as an employee concerned with internal office issues.  *Id*.

---

[9]  In the context of its discussion of the applicability of the *Elrod/Branti* exception, *supra,* the Court noted the lack of evidence regarding Plaintiff's inherent job duties.  The lack of evidence does not change the Court's analysis, above, as Defendants herein do not argue that Plaintiff's job duties as Information Technology Manager included the reporting to the authorities of suspected criminal activity occurring in the workplace.  Moreover, there is nothing in the Complaint or its attachments that would remotely suggest that Plaintiff's job duties included the reporting of suspected government corruption.

With regard to Handy-Clay's reporting of her concerns regarding the violation of city policies, the Sixth Circuit disagreed with the district court, as follows:

The third category of speech concerns Handy–Clay's claim regarding violations of particular city policies.  She alleged that "some employees of the City Attorney's office were absent, but were not reporting their absence on the city attorney's daily attendance log," and that she was "concerned that City funds were being improperly used."  She began reporting her concerns as early as August 2009, to individuals both inside and outside of her department.  The day before she was terminated, Handy–Clay submitted open-records requests asking for "documents regarding vacation, sick and bonus time, time sheets, docked pay, personnel files, and payroll check requests for City Attorney's office employees."

The district court determined that these complaints were also made pursuant to Handy–Clay's official duties.  The district judge reasoned that Handy–Clay's allegations about abusive pay policies were motivated by her personal concern that other employees in the City Attorney's office were receiving preferential treatment and advantages that she had not received, and that this discrimination was in retaliation for her other speech acts.  The court concluded that her speech on this topic was only a reflection of her "private interests as Public Records Coordinator and an employee of the City Attorney's Office, not as a concerned citizen."

We conclude that this interpretation does not read the complaint in the light most favorable to Handy–Clay, as the district court was required to do.  **Handy–Clay alleged that she was concerned with the improper use of city funds, and she spoke about her concerns to a number of individuals both inside and outside her department.**  She was not asked to investigate the alleged misconduct or to give her opinion on any violations.  This fact distinguishes her case from *Weisbarth*, in which a park ranger made critical comments about her department's "morale and performance issues" but made the comments only in response to a paid consultant's queries, at the behest of her employer.  499 F.3d at 543, 546.  Like the plaintiff in *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752 (6th Cir. 2010), Handy–Clay's comments were "extraordinary rather than everyday communication."  *Id.* at 768 (determining that court administrator's complaints about judge's religious references was not part of her official duties).  **In addition, we note that her conversations with individuals outside her department were clearly not part of her official duties as public records coordinator.**  For example, she spoke to an individual in the city payroll department, a human resources employee, and a city councilman.  These facts, too, distinguish her case from *Fox* and *Haynes*, because their complaints were made only to their immediate supervisors.  *Fox*, 605 F.3d at 350 (quoting the Fifth Circuit's observation that "when a public employee raises complaints or concerns

up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." (quoting *Davis*, 518 F.3d at 313)); *Haynes,* 474 F.3d at 364 ("The fact that Haynes communicated solely to his superior also indicates that he was speaking 'in [his] capacity as a public employee contributing to the formation and execution of official policy,' not as a member of the public...." (alteration in original) (quoting *Mills v. City of Evansville*, 452 F.3d 646, 648 (7th Cir.2006))).

**Hence, our review of the complaint, taking the allegations as true, leaves us with the firm impression that Handy–Clay has alleged sufficient facts to justify an inference that she spoke on these issues, both to her superiors and outside her chain of command, as a concerned citizen addressing an issue of public corruption. We find nothing in the complaint that suggests that the duties of her position as public records coordinator included reporting on government corruption and mismanagement of public funds.**

*Id*. at 542-543 (emphasis added).  Accordingly, the Sixth Circuit reversed the district court's dismissal under Rule 12(b)(6) of the portion of Handy-Clay's First Amendment retaliation claim that was based on her communications alleging corruption and mismanagement by public employees.  *Id*. at 548.

Moreover, in *Lane v. Franks*, ---- U.S. -----, 134 S.Ct. 2369, 2379, 189 L.Ed.2d 312 (2014), the Supreme Court recently clarified that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."  In *Lane,* the plaintiff was the director of a statewide program for underprivileged youth.  *Id.* at 2375.  In the course of his employment, he discovered that a state representative, Suzanne Schmitz, had been on the program's payroll for work she did not perform.  Plaintiff thereafter fired Schmitz.  *Id*.  The FBI then initiated an investigation into Schmitz, which resulted in her indictment on four counts of mail fraud and four counts of theft concerning a program receiving federal funds.  *Id*.  Plaintiff testified, under subpoena, at

34

Schmitz's criminal trials[10] regarding the events that led to her termination.  *Id*.  The jury

ultimately convicted Schmitz, and she was later sentenced to thirty months in prison.  *Id*.  Plaintiff

was later terminated from his position as the underprivileged youth program director.  *Id*. at 2376.

He filed suit under § 1983, alleging his supervisor had violated the First Amendment by firing

him in retaliation for his testimony against Schmitz.  *Id.*

The district court granted summary judgment to the defendant, and the Eleventh Circuit

affirmed on the grounds that "even if an employee was not required to make the speech as part of

his official duties, he enjoys no First Amendment protection if his speech 'owes its existence to

[the] employee's professional responsibilities' and is 'a product that the employer himself has

commissioned.'"  *Id*.  The Supreme Court reversed, holding that Lane's truthful sworn testimony

at Schmitz's criminal trials is speech as a citizen on a matter of public concern.  *Id*. at 2380.  In so

holding, the Court explained:

> In holding that Lane did not speak as a citizen when he testified, the Eleventh
> Circuit read *Garcetti* far too broadly.  It reasoned that, because Lane learned of
> the subject matter of his testimony in the course of his employment with [the
> youth program], *Garcetti* requires that his testimony be treated as the speech of an
> employee rather than that of a citizen.  *See* 523 Fed.Appx., at 712. It does not.
>
> The sworn testimony in this case is far removed from the speech at issue in
> *Garcetti*—an internal memorandum prepared by a deputy district attorney for his
> supervisors recommending dismissal of a particular prosecution.  The *Garcetti*
> Court held that such speech was made pursuant to the employee's "official
> responsibilities" because "[w]hen [the employee] went to work and performed the
> tasks he was paid to perform, [he] acted as a government employee. The fact that
> his duties sometimes required him to speak or write does not mean that his

---

[10] Schmitz was tried twice on the criminal charges against her.  The jury failed to reach a
verdict after the first trial.  Federal prosecutors retried the case six months later, at which time
Schmitz was convicted of three counts of mail fraud and four counts of theft concerning a
program receiving federal funds.  Lane testified, under subpoena, at both trials.  *Id*. at 2375.

supervisors were prohibited from evaluating his performance." 547 U.S., at 422, 424, 126 S.Ct. 1951.

> **But *Garcetti* said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment. The *Garcetti* Court made explicit that its holding did not turn on the fact that the memo at issue "concerned the subject matter of [the prosecutor's] employment," because "[t]he First Amendment protects some expressions related to the speaker's job." *Id*., at 421, 126 S.Ct. 1951. In other words, the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.**

*Id*. at 2379 (emphasis added).

Here, construing the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff has sufficiently alleged that she was speaking as a private citizen when she reported her concerns regarding Defendant Kovack's misuse of county resources.  Like the plaintiffs in *Handy-Clay* and *Lane*, Plaintiff herein alleges she became aware of Defendant Kovack's conduct during her employment; she was concerned that his conduct violated state law; and, she reported her concerns both inside and outside her workplace.  (Doc. No. 1-3 at ¶¶ 12-17, 23-24; Exh. D.)  As the Supreme Court recently made clear in *Lane* (which was not cited by either party), the mere fact that Plaintiff learned about Defendant Kovack's misuse of public resources in the course of her employment is not dispositive.  Rather, the "critical question" is whether Plaintiff's *speech* was ordinarily within the scope of her duties.  Defendants do not argue, and there is nothing in the Complaint or its attachments to suggest, that Plaintiff's duties as Information Technology Manager included the reporting of suspected government corruption or misuse of county resources.

Accordingly, the Court rejects Defendants' argument that Plaintiff's speech is not protected under the First Amendment because she was speaking pursuant to her duties as Information Technology Manager and not as a private citizen.

### 3. Causation

Defendants next argue Plaintiff's First Amendment claims should be dismissed because Plaintiff has failed to allege any facts that would establish a causal connection between her termination and the alleged protected conduct.  (Doc. No. 42 at 20.)  Defendants emphasize that Plaintiff reported her concerns to Defendant Kovack and the Medina County Sheriff on March 19 and 20, 2014 but her employment was not terminated until six months later on September 27, 2014.  Defendants argue this six month period of time is insufficient to establish a *prima facie* case of retaliation and "there are no other allegations contained within the Complaint that would establish a causal connection between" Plaintiff's speech and her termination.  Accordingly, Defendants argue Plaintiff's First Amendment claim fails as a matter of law.

Plaintiff argues a number of intervening events took place between her March 2014 speech and her September 2014 termination, including Defendants' decision to discipline Plaintiff for insubordination and refusal to allow Plaintiff to return to work after taking FMLA leave.  Plaintiff argues the Complaint sufficiently alleges a causal connection between her speech and termination because she "was never permitted to return to work following [her] report of Kovack's criminal activity to the Medina County Sheriff and upon the termination of [her] FMLA leave."  (Doc. No. 46 at 19.)

The third element of a *prima facie* First Amendment retaliation claims requires the plaintiff to prove "a causal connection between the protected conduct and the adverse action."

37

*Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).  The Sixth Circuit has determined that, to satisfy this element, a plaintiff must show that the exercise of her First Amendment rights was a "substantial or motivating factor" in the defendants' adverse employment action.  *See Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 400 (6th Cir. 2010); *Eckerman v. Tennessee Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010).  Specifically, a plaintiff  "'must point to specific, nonconclusory allegations reasonably linking [her] speech to employer discipline.'"  *Vereecke*, 609 F.3d at 400 (quoting *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003)).  Moreover, the Sixth Circuit has interpreted the term "motivating factor" to mean the but-for cause, "without which the action being challenged simply would not have been taken." *Id*. (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)).

"A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation." *Eckerman*, 636 F.3d at 209.  If a causal connection is to be established through circumstantial evidence, the court may consider incidents of misconduct that do not rise to the level of an adverse employment action if they "show a pattern of mistreatment on the job based on the plaintiff's protected activities." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305 (6th Cir. 2012).  Generally, a defendant's motivation for taking adverse action against the plaintiff is a matter to be resolved by a jury.  *Id.* at 308.

Here, the Complaint and its attachments allege the following sequence of events:

• On March 19, 2014, Plaintiff "presented her employer Kovack with a letter reporting to Kovack that she had discovered that Kovack had printed his "Auditor Kovack Chili Cook Off" campaign literature from the Medina County Auditor's Office computers and printers."  (Doc. No. 1-3 at ¶ 14.)

38

- On March 20, 2014, Kovack, Heller, and Nichols met with Ehrlich and presented her with a letter dated March 17, 2014 scheduling a pre-disciplinary conference for Ehrlich on March 21, 2014, alleging Ehrlich's insubordination for attempting to use her vacation time to attend a software training seminar. *Id*. at ¶ 18.

- That same day, Plaintiff filed a report with the Medina County Sheriff describing Kovack's allegedly unlawful use of the Auditor's Office resources to produce Kovack's campaign literature. *Id*. at ¶ 23.

- On March 21, 2014, Defendants conducted a pre-disciplinary hearing and advised Plaintiff that she was probably going to be suspended for three days for attempting to attend the software seminar. *Id.* at ¶ 25.

- On March 24, 2014, Defendant Kovack advised Plaintiff that her punishment was to be a written reprimand for disrespect and insubordination. *Id*. at ¶ 26.

- Approximately four months later, on July 22, 2014, Plaintiff requested leave from her employment at the Auditor's Office to care for her mother under the Family Medical Leave Act ("FMLA"). *Id*. at ¶ 27 and Exh. G.

- Plaintiff returned from her FMLA leave on August 25, 2014. *Id*. at ¶ 28.

- Defendant Kovack, however, informed Plaintiff that she was placed on administrative leave without explanation until September 3, 2014. *Id*. at ¶ 28.

- On August 29, 2014, Defendant Kovack sent Ehrlich a letter "whereby Kovack advised Ehrlich that she was being placed on administrative leave until further notice and that Ehrlich was to report to the Auditor's Office on September 5, 2014 to discuss concerns Kovack had prior to Ehrlich's FMLA leave." *Id*. at ¶ 29; Exh. I.

- On September 5, 2014, Plaintiff reported to the Auditor's Office for a meeting with Defendant Kovack. "At this meeting Kovack expressed concerns alleging that Ehrlich did not inform the Auditor's Office that Ehrlich was assisting another county department to set up Pictometry training, and that Ehrlich had collected the information regarding Kovack that Ehrlich previously provided to the Medina County Sheriff." *Id.* at ¶ 30.

- Plaintiff remained on administrative leave following the meeting with no explanation. *Id*. at ¶ 32.

- On September 18, 2014, Plaintiff went to the Auditor's Office and requested a copy of her employment file. *Id*. at ¶ 36. Upon receipt of her file, Plaintiff "discovered that positive accolades regarding her employment performance had also been removed." *Id*. at ¶ 38.

- That same day, "Ehrlich learned that Kovack sent a text message to Ehrlich's husband, rather than Ehrlich directly on Ehrlich's Medina County issued telephone, informing Ehrlich to stay away from the Auditor's Office until further notice." *Id*. at ¶ 39.

- Also on September 18, 2014, Defendant Heller filed a Petition for Civil Stalking Protection against Plaintiff.  Therein, Defendant Heller "falsely accused Ehrlich of throwing papers at Heller, exhibiting aggressive behavior when Heller gave Ehrlich her paycheck, and taunting Heller." *Id*. at ¶ 41.  Heller's allegations related to Plaintiff's alleged behavior when Plaintiff came to the Auditor's Office to request a copy of her employment file.

- On September 19, 2014, Kovack sent a pre-disciplinary letter to Plaintiff requesting that she appear for another disciplinary hearing. *Id.* at ¶ 44.

- On September 26, 2014, Plaintiff attended the disciplinary hearing "at which Heller once again falsely claimed that Ehrlich was violent toward Heller on September 18, 2014 and that Heller was fearful of Ehrlich." *Id*. at ¶ 45.

- On September 27, 2014, Plaintiff "received a certified letter allegedly prepared after the disciplinary hearing terminating [her] from her employment with the Auditor's Office." *Id*. at ¶ 46, Exh. P.

Defendants argue the six month time lapse between Plaintiff's speech and termination is "not so overwhelming as to establish causation on its own."  (Doc. No. 42 at 21.)  They assert there are no other allegations that would establish a causal connection and, therefore, Plaintiff's First Amendment retaliation claim fails as a matter of law.  (Doc. No. 42 at 21.)  The Sixth Circuit has held that, "[u]nder some circumstances, close temporal proximity between protected conduct and an adverse action may be sufficient on its own to raise an inference of causation." *Benison v. Ross,* 765 F.3d 649, 661 (6th Cir. 2014) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).  As a general rule, courts in this Circuit have determined that "temporal proximity, at least beyond six months, absent some further indicia of retaliation, cannot be used to infer causation." *Neiman v. Reid*, 2015 WL 1476779 at * 13 (N.D. Ohio March 31, 2015).  *See e.g., Benison*, 765 F.3d at 661 (finding that lapse of more than six months

40

does not permit strong casual inference); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (two to five months insufficient).  Indeed, the Sixth Circuit has explained that "the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [her] claim with other evidence of retaliatory conduct to establish causality."  *Akers v. Cnty of Bell*, 498 Fed. Appx. 483, 487 (6th Cir. 2012).

Here, the Court finds the Complaint sufficiently alleges a causal connection between Plaintiff's March 2014 speech and her September 2014 termination.  As an initial matter, the Complaint appears to allege direct evidence of retaliation.  Specifically, Plaintiff alleges that, after she returned from FMLA leave, Defendant Kovack advised her that she had been placed on administrative leave at least in part because she "had collected the information regarding Kovack that Ehrlich previously provided to the Medina County Sheriff."  (Doc. No. 1-3 at ¶ 30.) Moreover, while Defendants argue the six month lapse between Plaintiff's speech and termination is insufficient to establish causation, the Complaint alleges several intervening incidents of alleged retaliatory conduct, including Plaintiff's written reprimand for taking vacation time to attend software training; and, the alleged removal of "positive accolades" from her employment file.  *Id.* at ¶¶ 26, 38.

Based on the above, the Court finds Plaintiff has sufficiently alleged both direct and circumstantial evidence of causation to withstand judgment on the pleadings.

### 4.    Qualified Immunity

Defendants next argue that, "even if this Court determines that the allegations contained in the Complaint plausibly state a claim against them, [Defendant Kovack is] nonetheless entitled to qualified immunity as the Plaintiff cannot establish that this violation was clearly

established at the time of the violation."  (Doc. No. 42 at 23.)  Specifically, Defendants claim

Defendant Kovack was "entitled to rely upon the plethora of case law that concludes that a

confidential employee, like Ms. Ehrlich, can be terminated for disloyal speech."[11]  *Id*. at 24.

Qualified immunity protects public officials from liability for civil damages if their

conduct does not violate "clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808,

172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982)).  The Sixth Circuit follows a "two-tiered inquiry" to determine if an officer

is entitled to qualified immunity.  *Austin v. Redford Twp. Police Dept*., 690 F.3d 490, 496 (6th

Cir. 2012).  *See also Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

The first step is to determine whether, considering the allegations in a light most favorable to the

party injured, a constitutional right has been violated.  *See Pearson*, 555 U.S. at 232; *Everson v.*

*Leis*, 556 F.3d 484, 493 (6th Cir. 2009); *Pritchard v. Hamilton Township Board of Trustees*, 2011

WL 2039066 at * 5 (6th Cir. May 25, 2011).  The second is to ask if the right at issue was

"clearly established" when the event occurred such that a reasonable officer would have known

that his conduct violated it.  *Pearson,* 555 U.S. at 232.  *See also Martin*, 712 F.3d at 957.  The

Supreme Court has explained that these two steps may be addressed in any order.  *Pearson*, 555

---

[11] In their Motion, Defendants argue that both Defendants Kovack and Heller are entitled to qualified immunity with respect to Plaintiff's First Amendment claim, i.e., Count Two.  (Doc. No. 42 at 17.)  However, the Court does not construe Count Two as asserting a First Amendment claim against Defendant Heller.  *See* Complaint at ¶ 57 ("Defendants Kovack, the Auditor's Office, the County and the Commissioners acting under color of law, took actions which were in violation of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the Constitution of the State of Ohio, as said actions constituted retaliation against the Plaintiff for exercising her constitutional right of free speech and expression which are the proximate cause of Ehrlich's damages").

U.S. at 236.  "But both must be answered in the affirmative for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights." *Martin*, 712 F.3d at 957.  If either one is not satisfied, qualified immunity will shield the officer from civil damages. *Id.  See also Pearson*, 555 U.S. at 236.

The Supreme Court has long held that "[i]t is clearly established that a State may not discharge an employee on the basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (citing *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697-98, 33 L.Ed.2d 570 (1972)).  Moreover, the Sixth Circuit has explained that "we have consistently protected a public employee's right to discuss issues of public corruption" and "[o]ur precedent is clear that speech regarding these issues implicates matters of public concern." *Whitney v. City of Milan*, 677 F.3d 292, 298 (6th Cir. 2012).

Defendants, however, argue that "[i]t was not clearly established in September 2014 that terminating a confidential employee based upon insubordinate speech would violate the employee's First Amendment rights."  (Doc. No. 42 at 24.)  As discussed *supra*, this Court has determined that, at this stage in the litigation, it cannot determine whether Plaintiff constitutes a confidential or policymaking employee for purposes of the *Elrod/Branti* exception. Thus, the Court finds it is similarly premature to determine whether Defendant Kovack is entitled to qualified immunity on the basis that it was not clearly established that Plaintiff, as a confidential employee, could not be terminated based upon allegedly insubordinate speech.  Accordingly, the Court finds that it is unable to determine this issue at this time.

**5.**    ***Monell* Liability**

43

Defendants next argue that, even assuming Plaintiff has plausibly alleged a violation of her constitutional rights, "she has nonetheless failed to allege any facts that would establish a cause of action against Medina County under 42 U.S.C. § 1983." (Doc. No. 42 at 22.) Specifically, Defendants maintain that "[t]here are no allegations that a county policy or custom was a moving force behind the alleged violation of the Plaintiff's constitutional rights." *Id.*

Plaintiff argues Ohio law gives Medina County the power to establish a department of personnel and that "[b]y failing to establish a department of personnel to establish policy regarding the hiring and firing of Medina's employees, Medina has in effect delegated the power to establish policy regarding the hiring and firing of Medina's employees to its various departments." (Doc. No. 46 at 20.) Plaintiff then asserts that Defendant Kovack "is the *de facto* policy maker for Medina with regard to the hiring and firing of [Auditor's Office] employees." *Id.* In other words, Plaintiff argues, "Kovack's policies are Medina's policies with regard to the hiring and firing of the employees in Kovack's department." *Id.*

As the Sixth Circuit has explained, "[t]he question of whether a municipality is liable under § 1983 has two parts: '(1) whether [the] plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Lee v. Metropolitan Government of Nashville and Davidson County*, 2011 WL 2882227 at * 12 (6th Cir. July 18, 2011) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Under the first part of this inquiry, a municipality cannot be held liable under § 1983 "based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). *See also Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007)("In fact,

44

because the jury found no constitutional violation . . . the county could not have been found liable . . . for an allegedly unconstitutional custom or policy.")

A municipality, however, may be held responsible for a constitutional violation based on § 1983 where its "official policy or custom actually serves to deprive an individual or his or her constitutional rights."  *Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006).  The Sixth Circuit has explained the contours of municipal liability as follows:

> The Supreme Court has approved municipal liability based on § 1983 when "the [municipal] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where such actions emanate from informal governmental custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  In other words, the constitutional violation must have sprung from "official policy" in one form or another. *Id*. at 694, 98 S.Ct. 2018.  As such, local government units cannot be held liable mechanically for their employees' actions under a respondeat superior theory.  *Id*. at 691, 98 S.Ct. 2018.  The plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). He "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

*Alman v. Reed*, 703 F.3d 887, 902-903 (6th Cir. 2013).  *See also Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) ("[T]o satisfy the *Monell* requirements, a plaintiff must identify the policy, connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of that policy").

Here, Plaintiff has not identified any policy or custom connected to Medina County that resulted in her alleged injury.  Plaintiff does not identify any particular custom, practice, or policy of the County in the Complaint, nor does she plead any factual allegations suggesting that her particular injury was incurred because of the execution of a County policy or custom.  Indeed, the

45

words custom and policy do not appear anywhere in the Complaint.  Although Plaintiff argues in her Brief that Defendant Kovack is the "*de facto*" policymaker for Medina County with regard to the hiring and firing of Auditor's Office employees, this allegation does not appear in the Complaint and, thus, cannot be considered in response to Defendants' motion.

While the Complaint does allege generally that the County violated Plaintiff's First Amendment rights (Doc. No. 1-3 at ¶¶ 56, 57), such bare legal conclusions are not enough to survive a motion to dismiss under Rule 12(b)(6).  *See Twombly*, 555 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . . a plaintiff[] [must allege] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")(internal citations omitted).  In the instant case, the Complaint's general allegations regarding the County in connection with this claim do not sufficiently identify a relevant  policy or suggest that Plaintiff's injury was the result of such a policy.  In light of these pleading deficiencies, the Court finds that Count Two of the Complaint cannot be construed as setting forth a "plausible" claim for municipal liability under § 1983. [12]

---

[12] The Court recognizes that, in the absence of discovery, civil rights plaintiffs face challenges in pleading the existence of a municipal custom or policy.  However, applying the principles set forth in *Twombly* and *Iqbal*, district courts have held that a plaintiff must nevertheless plead sufficient factual allegations to support a claim of municipal liability under § 1983 in order to survive dismissal under Rule 12(b)(6).  *See e.g. Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F.Supp.2d 747, 749 (M.D. Tenn. 2010); *Cunningham v. Cleveland Police Dep't*, 2010 WL 5636778 at * 6 (N.D. Ohio Dec. 22, 2010); *Wooten v. Spigner*, 2011 WL 5075692 (E.D. Mich. Sept. 8, 2011) *adopted by* 2011 WL 5075714 (E.D. Mich. Oct. 25, 2011).  Here, Plaintiff's perfunctory assertion that Medina County violated her First Amendment rights is simply insufficient to state a claim for municipal liability under § 1983, lack of discovery notwithstanding.

Accordingly, the Medina County Defendants are granted judgment in their favor with respect to Plaintiff's First Amendment claim.

### 6. Conclusion

For all the reasons set forth above, Defendants' Motion for Judgment on the Pleadings is denied with respect to Plaintiff's First Amendment Claim against Defendant Kovack in his individual capacity.  Defendants' motion is granted, however, with respect to Plaintiff's First Amendment claims against the Medina County Defendants.

## C. Defamation Claim against Defendant Heller (Count Three)

Count Three of the Complaint alleges a state law claim for defamation against Defendant Heller.  The allegations underlying this claim are as follows:

> 40.  On or about September 18, 2014, Heller filed a Petition for Civil Stalking Protection pursuant to R.C. 2903.214 ("the Petition") against Ehrlich.  *See* Petition September 18, 2014, Exhibit N.

> 41.  In this Petition, Heller falsely accused Ehrlich of throwing papers at Heller, exhibiting aggressive behavior when Heller gave Ehrlich her paycheck and taunting Heller.

> 42.  Heller also falsely stated that Ehrlich requested FMLA leave due to Ehrlich's "anxiety issues."  *See* FMLA form, Exhibit G.

> 43.  At an *ex parte* hearing on the Petition, Heller voluntarily dismissed the Petition.

(Doc. No. 1-3 at ¶¶ 40-43.)  Based on these allegations, the Complaint asserts Heller "made statements to the Medina County Court of Common Pleas and other individuals that Ehrlich was violent and took FMLA leave due to anxiety issues." *Id*. at ¶ 60.  The Complaint further alleges that (1) "Heller's statements were false;" (2) "Heller's statements were made with knowledge that they were false, or in reckless disregard of the truth;" and, (3) Heller's statements caused harm to

47

the reputation of Ehrlich and proximately caused the loss of Ehrlich's employment." *Id.* at ¶¶ 61-64.

Defendant Heller argues she is entitled to judgment in her favor with respect to Plaintiff's defamation claim for several reasons. First, Heller maintains Plaintiff was acting as a "limited purpose public figure" at all times related to this lawsuit and, therefore, must allege "actual malice" on Defendant Heller's part. (Doc. No. 42 at 25.) Heller then argues "[t]here is absolutely no allegations that [she] acted with actual malice in making the statements contained in the civil protective order petition." *Id.* at 26. Finally, Heller maintains the allegedly defamatory comments at issue occurred in court proceedings or disciplinary proceedings and are, therefore, privileged as a matter of law.

Plaintiff argues that, assuming she (Plaintiff) was a limited public figure when Heller made her allegedly defamatory statements, the Complaint "clearly allege[s] 'actual malice' as the allegations claim that Heller made her statements with knowledge that they were false, or in reckless disregard of the truth." (Doc. No. 46 at 24.) Plaintiff also alleges Heller's defamatory statements are not privileged because (1) they were made to individuals outside the judicial proceedings; and, (2) "had no reasonable relation to a judicial proceeding" since Heller immediately dismissed the Petition for Civil Stalking Order after filing. *Id.*

To prevail in a defamation case, a plaintiff who is a private person must prove five elements: "'(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory *per se* or caused special harm to the plaintiff.'" *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 108 (Ohio App. 9th Dist. 2009)

48

(quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (Ohio App. 9th Dist. 1996)).  *See also*

*McPeek v. Leetonia Italian-Am. Club,* 174 Ohio App.3d 380, 384 (Ohio App. 7th Dist. 2007).

 "There are four classifications for a plaintiff who alleges defamation: '(1) a private

person; (2) a public official; (3) a public figure; and (4) a limited purpose public figure.'" *Kassouf*

*v. Cleveland Magazine City Magazines*, 142 Ohio App.3d 413, 421 (Ohio App. 11th Dist. 2001)

(citing *Talley v. WHIO TV–7 & WDTN TV–2*, 131 Ohio App.3d 164, 169 (Ohio App. 2nd Dist.

1998)).  *See also Fuchs v. Scripps Howard Broadcasting Co.*, 170 Ohio App.3d 679, 691 (Ohio

App. 1st Dist. 2006).  The determination of whether or not a party is a public figure is a matter of

law.  *Kassouf,* 142 Ohio App.3d at 421.  *See also McPeek*, 174 Ohio App.3d at 385.  A public

figure is a person whose position or activities thrust them into the center of an important public

controversy.  *Kassouf,* 142 Ohio App.3d at 421. (*citing Curtis Publ'g Co. v. Butts*, 388 U.S. 130,

155, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)).  A limited purpose public figure is one who

becomes a public figure for a specific range of issues by being drawn into or voluntarily injecting

himself into a specific public controversy.  *Id*.  (citing *Gertz v. Robert Welch, Inc*., 418 U.S. 323,

351, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).

 Here, Plaintiff does not challenge, for purposes of the instant motion for judgment on the

pleadings, that she was a limited purpose public figure when Defendant Heller made her allegedly

defamatory statements.  (Doc. No. 46 at 24.)  Thus, for purposes of the instant motion only, the

Court will considers Plaintiff to be a limited purpose public figure.  As such, Plaintiff must plead

"actual malice" on the part of Defendant Heller in publishing the allegedly false statements at

issue.  *Id.*  (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280, 84 S.Ct. 710, 11

L.Ed.2d 686 (1964)).  *See also Fuchs*, 170 Ohio App.3d at 691.  "'Actual malice' is demonstrated

49

by evidence that shows the defendant published the statement with knowledge that it was false or that the defendant published the statement with reckless disregard as to whether it was false or not." *Id.* (citing *New York Times Co.*, 376 U.S. at 280–281). "'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Id.* (citing *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). Plaintiff "bears the burden of producing clear and convincing evidence of 'actual malice.'" *Id.* (citing *Gertz*, 418 U.S. at 342 and *New York Times Co.*, 376 U.S. at 285–286.)

Defendants first argue that the "comments allegedly made by Ms. Heller during the court proceedings [relating to her Petition for Civil Stalking Order] are protected by the litigation privilege, which is an absolute privilege." (Doc. No. 42 at 26.) In *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), the Ohio Supreme Court held that "[a]s a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which is appears." *Id.* at syllabus. *See also Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993); *Arms Trucking Co., Inc. v. Braun*, 2014 WL 6139969 at * 8 (Ohio App. 11th Dist. Nov. 17, 2014). The doctrine of absolute privilege extends to communications that occur at "'every step in the proceeding, from beginning to end.'" *Black v. Hamilton County Public Defender Commission*, 2015 WL 3903706 at * 30 (S.D. Ohio June 24, 2015) (quoting *Prakash v. Altadis USA Inc.*, 2012 WL 1109918 at * 11 (N.D. Ohio March 30, 2012)).

Whether the absolute privilege applies in a given case is a question of law for the Court. *See Black*, 2015 WL 3903706 at * 30; *Prakash*, 2012 WL 1109918 at * 11. "Such a privilege is

50

applicable even though the statement may have been made with actual malice, in bad faith and with knowledge of its falsity." *Arms Trucking Co., Inc*., 2014 WL 6139969 at * 8 (citing *Bigelow v. Brumley*, 138 Ohio St. 574, 579 (1941)).

Plaintiff argues, summarily, that the doctrine of absolute privilege does not apply because "Heller's statements had no reasonable relation to a judicial proceeding." (Doc. No. 46 at 26.) Specifically, Plaintiff asserts that "[t]here never was a judicial proceeding initiated as Heller immediately dismissed the Petition." *Id.*

The Court finds that, to the extent Plaintiff's defamation claim is based on statements allegedly made by Defendant Heller to the Medina County Court of Common Pleas in connection with her Petition for Civil Stalking Order, those statements are absolutely privileged. The statements at issue (i.e., that Plaintiff "threw papers," "exhibited aggressive behavior," "taunted" Heller; and requested FMLA leave for "anxiety issues") are contained within the Petition itself, which was filed in the Medina County Court of Common Pleas on September 18, 2014. (Doc. No. 1-3, Exh. N). Although Plaintiff asserts "there was never a judicial proceeding initiated as Heller immediately dismissed the Petition," the Complaint and the documents attached thereto indicate the Petition was assigned a case number and trial judge and, an *ex parte* hearing was conducted. (Doc. No. 1-3 at ¶ 43, Exh. N.)

Under *Surace*, statements made in the context of these proceedings (however brief)[13] are absolutely privileged if they bear "some reasonable relation to the judicial proceeding." *Surace*, 25 Ohio St.3d at syllabus. Here, Plaintiff makes no argument that the substance of the statements set forth in the Petition are not "reasonably related" to the judicial proceedings. Thus, the Court

---

[13] Plaintiff cites no authority for her argument that absolute privilege does not apply where a judicial proceeding is voluntarily dismissed at an early stage in the litigation.

finds that, to the extent Plaintiff's defamation claim is based on statements made by Defendant

Heller to the Medina County Court of Common Pleas in connection with her Petition for Civil

Stalking Order, those statements are absolutely privileged and Defendant Heller is entitled to

judgment in her favor with respect to those statements.

However, Plaintiff notes that the Complaint alleges that Heller "made statements to the

Medina County Court of Common Pleas *and other individuals* that Ehrlich was violent and took

FMLA leave due to anxiety issues."  (Doc. No. 1-3, ¶ 60) (emphasis added).  To the extent

Plaintiff's defamation claim is based on Heller's statements to "other individuals," the Court finds

these statements are not protected by the doctrine of absolute privilege.  Construing the

allegations in Plaintiff's favor, the Court finds the Complaint's reference to "other individuals"

could reasonably be read to allege that Heller repeated the allegedly defamatory statements in her

Petition to individuals outside the judicial proceedings, such as co-workers, friends, etc.

Defendants do not argue that any such extra-judicial statements are absolutely privileged.[14]

Thus, to prevail on her claim regarding Heller's alleged defamatory statements to "other

individuals," Plaintiff must plead and prove plead "actual malice" on the part of Defendant

Heller.  *See New York Times Co.*, 376 U.S. at 279–280; *Fuchs*, 170 Ohio App.3d at 691.  As noted

above,  "'actual malice' is demonstrated by evidence that shows the defendant published the

statement with knowledge that it was false or that the defendant published the statement with

reckless disregard as to whether it was false or not."  *New York Times Co.*, 376 U.S. at 280–281).

Here, the Complaint alleges Heller's statements "were made with knowledge that they were false,

or in reckless disregard of the truth."  (Doc. No. 1-3 at ¶ 62.)  Moreover, Plaintiff attaches a

_____

[14] Nor does Defendant Heller argue that Plaintiff failed to sufficiently identify the "other individuals" referenced in the Complaint.

document to the Complaint entitled "Certification of Health Care Provider for Family Member's Serious Health Condition (Family and Leave Act)," which Plaintiff alleges she submitted as part of her FMLA leave request.  *Id.* at ¶ 27, Exh. G.  Contrary to the statement in Heller's Petition for Civil Stalking Order, Plaintiff's Certification does not list "anxiety issues" as the reason for her FMLA leave.  *Compare* Doc. No. 1-3, Exhibits G and N.  In light of the above, and construing the allegations contained within the Complaint as true, the Court finds Plaintiff has sufficiently alleged "actual malice" to withstand judgment on the pleadings with respect to this claim. [15]

Accordingly, the Court finds that Defendant Heller is entitled to judgment in her favor on Count Three to the extent this claim is based on statements made by Defendant Heller to the Medina County Court of Common Pleas in connection with her Petition for Civil Stalking Order. However, Heller is not entitled to judgment in her favor to the extent Count Three is based on Heller's allegedly defamatory statements to "other individuals."

### D.      Malicious Prosecution Claim Against Defendant Heller (Count Four)

In her fourth claim for relief, Plaintiff alleges a claim against Defendant Heller for malicious prosecution.  This claim is based on defendant Heller's filing of a Petition for Civil Stalking Order against Plaintiff in September 2014.  (Doc. No. 1-3 at ¶¶ 40-43.)  Specifically, the Complaint alleges that "Heller's Petition constitutes malicious prosecution in that the Petition was made with malice and without probable cause."  *Id.* at ¶ 67.

The Complaint does not specify whether this claim is brought as a federal or state law claim.  In their motion for judgment on the pleadings, Defendants treat Plaintiff's malicious prosecution claim as arising under state law.  (Doc. No. 42 at 27.)  Plaintiff does not challenge

---

[15]Because the Court finds Plaintiff sufficiently alleged "actual malice," it need not determine whether Heller's statements are subject to a qualified privilege.  (Doc. No. 42 at 26.)

this characterization in her Brief in Opposition and, indeed, recites the state law elements for this claim. (Doc. No. 46 at 27.)  Thus, the Court construes Count Four as stating a claim for malicious prosecution under Ohio law.

In Ohio, "the elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Rogers v. Barbera*, 170 Ohio St. 241, syllabus ¶ 1 (1960). *See also Williams v. Crosby*, 43 F.Supp.3d 794, 805 (N.D. Ohio 2014); *Lassen v. Lorain County, Ohio*, 2014 WL 3511010 at * 7 (N.D. Ohio July 2014); *Olson v. Holland Computer, Inc*., 2007 WL 2694202 at * 7 (Ohio App. 9th Dist. Sept. 17, 2007).  All three elements must be shown in order for a private person who initiates or procures institution of criminal proceedings against another to be subject to liability.  *Ash v. Ash,* 72 Ohio St.3d 520, 522 ( 1995)

Defendant Heller argues that the facts alleged by Plaintiff fail to state a claim for malicious prosecution as a matter of law.  Specifically, Defendant Heller maintains Plaintiff cannot allege the final element of malicious prosecution (i.e., termination of the prosecution in favor of the accused) because "Plaintiff alleges in her Complaint that the petition for protective order was voluntarily dismissed."  (Doc. No. 42 at 27.)

Plaintiff claims she has stated a claim for malicious prosecution because "Heller as a complaining witness abandoned that claim at the *ex parte* hearing" and, therefore, "the third element of Malicious Prosecution survives Heller's Motion for Judgment on the Pleadings." (Doc. No. 46 at 27.)

In *Ash, supra*, the Ohio Supreme Court elaborated on the third element of a malicious prosecution claim, as follows:

> A proceeding is "terminated in favor of the accused" only when its final disposition indicates that the accused is innocent.  *See* 3 Restatement of the Law 2d, Torts (1977) 420, Section 660, Comment a.  Thus, an unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused.  *See Douglas v. Allen* (1897), 56 Ohio St. 156, 46 N.E. 707; *see, also*, Prosser & Keeton, Law of Torts (5 Ed.1984) 874, Section 119 ("Prosser"); 3 Restatement of the Law 2d, Torts (1977) 419, Section 659(c), Comment e.
>
> However, a prosecution that is terminated by reason of a voluntary settlement or agreement of compromise with the accused is not indicative of guilt or innocence and, therefore, is not a termination in favor of the accused.  *See* Prosser, *supra*, at 875; 54 Corpus Juris Secundum (1987) 581, Malicious Prosecution, Section 55; 52 American Jurisprudence 2d (1970) 211, Malicious Prosecution, Section 43.

*Ash*, 72 Ohio St.3d at 522-523.  Since *Ash* was decided, "a number of Ohio courts of appeals . . . have held that the voluntary dismissal of a complaint is not a termination in favor of a party who later asserts a malicious-prosecution claim."  *Miller v. Unger*, 192 Ohio App. 3d 707, 710 (Ohio App. 12th Dist. 2011) (citing *Elite Designer Homes, Inc v. Landmark Partners*, 2006 WL 2270832 (Ohio App. 9th Dist. August 9, 2006); *Graff v. Ohio Valley Truss Co.*, 2005 WL 3441252 (Ohio App. 4th Dist. Dec. 12, 2005); *Bayer v. Neff*, 1995 WL 815345 at * 4 (Ohio App. 11th Dist. Dec. 29, 1995) *overruled on other grounds by Palivoda v. Felix*, 2011 WL 4790982 at fn 3 (Ohio App. 11th Dist. Oct. 7, 2011)).

In the instant case, Plaintiff alleges Defendant Heller "voluntarily dismissed the Petition" but it is unclear whether Heller voluntarily dismissed the Petition pursuant to Ohio R. Civ. Pr. 41(A) or, alternatively, "abandoned" it at the *ex parte* hearing conducted in state court.  Further discovery will be necessary to determine the circumstances under which Defendant Heller's Petition was dismissed.  Accordingly, the Court finds Defendant Heller is not entitled to judgment on the pleadings in her favor with respect to Count Four.

**E.      Intentional Infliction of Emotional Distress claim against all Defendants (Count Five)**

In Count Five, Plaintiff alleges that "Defendants' actions were intended to cause emotional distress to Ehrlich and/or the Defendants knew or should have known that their actions would result in emotional distress to Ehrlich."  (Doc. No. 1-3 at ¶ 70.)  Plaintiff further alleges, summarily, that Defendants' conduct was "extreme and outrageous" and "the direct and proximate cause of Ehrlich's psychic and physical injuries."  *Id*. at ¶ 71.  Finally, Plaintiff alleges that the mental anguish she has suffered is "severe" and she has suffered damage, "including but not limited to emotional distress resulting in mental injury and necessitating medical treatment, embarrassment, humiliation, a chilling effect on further constitutionally protected political expression, and has incurred attorney's fees and expenses."  *Id*. at ¶¶ 73, 74.

Defendants argue that, under Ohio law, "firing an employee is not 'so extreme and outrageous as to go beyond all possible bounds of decency.'" (Doc. No. 42 at 28.)  Thus, Defendants argue Plaintiff cannot "meet the high bar created by Ohio courts to successfully plead" an intentional infliction of emotional distress claim.  *Id.*

Plaintiff argues her claim survives because the Complaint does not merely allege that her emotional distress was the proximate result of the loss of her employment.  Rather, Plaintiff maintains the Complaint "alleges facts that Defendants terminated her employment by violation of the Ohio Whistleblower Act, R.C. 4113.52; that the Defendants retaliated against [her] for exercising [her] basic constitutional rights in reporting Kovack's crimes; and that Heller defamed Ehrlich and maliciously prosecuted Ehrlich."  (Doc. No. 46 at 28-29.)  Thus, Plaintiff argues she has sufficiently alleged more than just termination of her employment in support of her intentional infliction of emotional distress claim.

56

"Under Ohio law, a plaintiff must demonstrate that: (1) the defendant intended to cause emotional distress, or knew or should have known that his conduct would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was outrageous and extreme beyond all bounds of decency and subsequently can be characterized as utterly intolerable in a civilized community; (3) the defendant's conduct was the proximate cause of plaintiff's psychic injuries; and (4) the plaintiff's emotional distress was serious, and of such a nature that no reasonable person could be expected to endure it."  *Bolander v. BP Oil Co.*, 128 Fed. Appx. 412, 419 (6th Cir. 2005) (citing *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App.3d 557, 561, 698 N.E.2d 503 (Ohio Ct.App.1997) and *Yaeger v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983) (*abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St.3d 464 (2007)).[16]

As one Ohio court explained, "[a]n action to recover for emotional distress may not be premised upon mere embarrassment or hurt feelings, but must be predicated upon a psychic injury that is both severe and debilitating."  *Blackburn v. Am. Dental Ctrs.*, 2011 WL 5825391 at * 10 (Ohio App. 10th Dist. Nov. 17, 2011) (citing *Mitnaul v. Fairmount Presbyterian Church*, 149 Ohio App.3d 769, 781 (Ohio App. 8th Dist. Oct. 24, 2002).  Indeed, as the Ohio Supreme Court has explained, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Yeager*, 6 Ohio St.3d at 374–75.  Thus, "[t]o say that Ohio courts narrowly define 'extreme and outrageous conduct'

---

[16] Although *Yeager* was abrogated in part by *Welling*, it was not abrogated with regard to the elements of intentional infliction of emotional distress. *See also Martin v. City of Broadview Heights*, 2011 WL 3648103 at * 17, fn 5.

57

would be something of an understatement." *Baab v. AMR Services Corp.*, 811 F.Supp. 1246, 1269 (N.D.Ohio 1993).  *See also Norman v. City of Lorain, Ohio*, 2006 WL 3337466 at * 2 (N.D. Ohio Nov. 16, 2006); *Martin v. City of Broadview Heights*, 2011 WL 3648103 at * 17 (N.D. Ohio Aug. 18, 2011).

Moreover, and of particular relevance to the instant case, Ohio courts have held that "[t]ermination of employment, without more, does not constitute the outrageous conduct required to establish a claim of intentional infliction of emotional distress, even when the employer knew that the decision was likely to upset the employee." *Gradisher v. Barberton Citizens Hospital*, 2011 WL 6076531 at * 2 (Ohio App. 9th Dist. Dec. 7, 2011) (citing *Craddock v. Flood Co.*, 9th Dist. No. 23882, 2008–Ohio–112, at ¶ 20.).  *See also Jones v. Wheelersburg Local School Dist.*, 2013 WL 4647645 at * 8 (Ohio App. 4th Dist. Aug. 19, 2013).

Here, however, Plaintiff correctly notes that she has alleged more than just the termination of her employment in support of her intentional infliction of emotional distress claim.  Specifically, Plaintiff claims Defendants defamed her and retaliated against her for exercising her constitutional rights to freedom of speech and expression.  At this stage in the litigation, the Court cannot find that these allegations are insufficient to plead that Defendants' conduct was "outrageous and extreme beyond all bounds of decency and subsequently can be characterized as utterly intolerable in a civilized community."  *Bolander,* 128 Fed. Appx. at 419.

Accordingly, the Court finds Defendants are not entitled to judgment in their favor with respect to Plaintiff's intentional infliction of emotional distress claim.

**F.      Conclusion**

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings is

GRANTED IN PART and DENIED IN PART as follows:

- With respect to Count One (Whistleblower Claim), Defendants' motion is denied.

- With respect to Count Two (First Amendment Claim), Defendants' motion is denied with respect to Plaintiff's individual capacity claim against Defendant Kovack, but granted with respect to Plaintiff's claims against the Medina County Defendants.

- With respect to Count Three (Defamation), Defendants' motion is granted to the extent this claim is based on statements made by Defendant Heller to the Medina County Court of Common Pleas in connection with her Petition for Civil Stalking Order; but denied to the extent Count Three is based on Heller's allegedly defamatory statements to "other individuals."

- With respect to Count Four (Malicious Prosecution), Defendants' motion is denied.

- With respect to Count Five (Intentional Infliction of Emotional Distress), Defendants' motion is denied.

IT IS SO ORDERED.

October 1, 2015                                    _s/ Greg White_____
Date                                                       Greg White
                                                               United States Magistrate Judge

59